THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

Plaintiff,

v.

JENNEEN ALSHALALDEH, DYLAN BARTELL, LINCOLN BOCK, JASON BRADLEY, PAUL COPELIN, KENNETH GRUNWALD, BIJAN HOOSHYAR, WILLIAM KELLEY, NICHOLAS KING, JACOB MORGANO, MARISSA RITTER, and SEAN ZLATNIK,

Defendants.

No. 2:26-cv-01680-JHC

**PLAINTIFF VALVE CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE AND FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 4

A. Valve, the Steam Platform, and the SSA ..... 4

B. *Wolfire* Plaintiffs Commence a Consumer Class Action Against Valve ..... 5

C. Defendants' Counsel Pursues AAA Arbitrations Against Valve ..... 5

D. Valve Removes the Arbitration Provision ..... 6

E. The AAA Administratively Stays the December 2023 Arbitrations, and Defendants' Counsel Commences Litigation ..... 8

F. Defendants' Counsel Asks the AAA to Proceed With Defendants' Arbitrations ..... 9

III. ARGUMENT ..... 9

A. The Court Should Deny Defendants' Rule 12(b)(3) Motion as Substantively and Procedurally Defective ..... 9

B. The Court Should Deny Defendants' Rule 12(b)(6) Motion Because Valve States a Claim ..... 10

1. The Well-Pleaded Allegations of the Complaint Do Not Provide Any Basis For Holding The Controlling SSA's Forum Provision Unconscionable ..... 10

(a) The Complaint Should Not Be Dismissed Based on Procedural Unconscionability ..... 11

(b) The Complaint Presents No Basis to Conclude that the Controlling SSA's Forum Provision Is Substantively Unconscionable ..... 16

2. The Controlling SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing ..... 18

3. Equitable Estoppel Is Inapplicable Here ..... 20

4. The Controlling SSA's Dispute Resolution Provision Is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA ..... 21

5. Valve Has Pleaded An All Writs Act Claim ..... 22

C. The Court Should Deny Defendants' Rule 12(c) Motion Because the Pleadings Are Not Closed ..... 24

IV. CONCLUSION ..... 24




**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## TABLE OF AUTHORITIES

Page(s)

### CASES

*A.C. ex rel. Carbajal v. Nintendo of America Inc.*,
No. C20-1694-TSZ,
2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) ..... 12

*Adkins v. Facebook, Inc.*,
No. C 18-05982-WHA,
2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ..... 12

*Adkins v. Nestle Purina PetCare Co.*,
779 F.3d 481 (7th Cir. 2015) ..... 23

*Aerojet-Gen. Corp. v. American Arbitration Ass'n*,
478 F.2d 248 (9th Cir. 1973) ..... 23

*Alaska Airlines, Inc. v. Carey*,
No. C07-5711-RBL,
2008 WL 743946 (W.D. Wash. Mar. 18, 2008) ..... 11

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ..... 18

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ..... 10

*Atlantic Marine Constitution Co. v. U.S. District Court for Western District of Texas,*
571 U.S. 49 (2013) ..... 10

*Badgett v. Security State Bank*,
116 Wash. 2d 563 (1991) ..... 18

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208-MKB-SMG,
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015)
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) ..... 2, 11, 12, 13

*Bauer v. Atlantis Events, Inc.*,
No. CV-13-05290-SJO,
2014 WL 12603112 (C.D. Cal. Mar. 5, 2014)
*aff'd*, 645 F. App'x 545 (9th Cir. 2016) ..... 12



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ....................20

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
371 F. Supp. 3d 610 (N.D. Cal. 2019) ....................20

*Clinton v. Goldsmith*,
526 U.S. 529 (1999)....................22, 23

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) ....................19

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)....................9, 20

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) ....................17, 21

*DeAsis v. YMCA of Yakima*,
183 Wash. App. 1018,
2014 WL 4376038 (Wash. Ct. App. Sep. 4, 2014)....................12

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ....................24

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023),
*aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) ....................14

*In re iPhone Application Litigation*,
No. 11-MD-02250-LHK,
2011 WL 4403963 (N.D. Cal. Sep. 20, 2011) ....................12

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403,
2026 WL 594859 (9th Cir. Mar. 3, 2026)....................3, 18

*Jeffery v. Weintraub*,
32 Wash. App. 536 (Ct. App. 1982) ....................16

*Kinzie Advanced Polymers LLC v. Highopes LLC*,
No. 2:24-CV-00388-LK,
2024 WL 4803515 (W.D. Wash. Nov. 15, 2024)....................24



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Kukje Hwajae Insurance Co. v. M/V Hyundai Liberty*,
294 F.3d 1171 (9th Cir. 2002),
*cert. granted, judgment vacated sub nom.*
*Green Fire & Marine Ins. Co. v. M/V Hyundai Liberty*, 543 U.S. 985 (2004) ....................10

*Leong v. Square Enix of America Holdings, Inc.*,
No. CV09-4484- 2010PSGVBKX,
2010 WL 1641364 (C.D. Cal. Apr. 20, 2010)
*aff'd*, 462 F. App'x 688 (9th Cir. 2011)....................2, 3, 14

*Leong v. Square Enix of America Holdings, Inc.*,
462 F. App'x 688 (9th Cir. 2011) ....................2, 3, 14

*Liberty Mutual Insurance Co. v. Aventura Engineering & Construction Corp.*,
534 F. Supp. 2d 1290 (S.D. Fla. 2008) ....................22

*McKee v. Audible, Inc.*,
No. CV 17-1941-GW(EX),
2017 WL 4685039 (C.D. Cal. July 17, 2017)....................14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Billington*,
No. CV 17-8150-GW,
2018 WL 6321658 (C.D. Cal. Jan. 8, 2018) ....................1, 2, 10

*Milliner v. Bock Evans Fin.ancial Couns.el, Ltd.*,
114 F. Supp. 3d 871 (N.D. Cal. 2015)....................10

*Missing Link, Inc. v. eBay, Inc.*,
No. C-07-04487-RMW,
2008 WL 3496865 (N.D. Cal. Aug. 12, 2008) ....................19

*Peters v. Amazon Services LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013),
*aff'd*, 669 F. App'x 487 (9th Cir. 2016)....................22

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025)....................18, 19

*PMI America, Inc. v. M.B. International*,
No. 1:12-CV-2293-TCB,
2012 WL 13018298 (N.D. Ga. Nov. 6, 2012) ....................3, 22

*Saeedy v. Microsoft Corp.*,
757 F. Supp. 3d 1172 (W.D. Wash. 2024)....................19



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Saucedo v. Experian Info. Sols.*,
No. 1:22-CV-01584-ADA-HBK,
2023 WL 4708015 (E.D. Cal. July 24, 2023) .......... 3, 17, 20

*Saunders v. Lloyd's of London*,
113 Wash. 2d 330 (1989) .......... 4, 20

*SCPS LLC v. Kind L.aw*,
No. CV 25-3255-MWF,
2026 WL 96898 (C.D. Cal. Jan. 8, 2026) .......... 3, 15, 17

*Singh v. Covington Water District*,
190 Wash. App. 416 (Wash. 2015) .......... 23

*Skillern v. Peloton Interactive, Inc.*,
No. 21 CIV. 6808 (ER),
2022 WL 3718279 (S.D.N.Y. Aug. 29, 2022) .......... 20

*In re Sussex*,
781 F.3d 1065 (9th Cir. 2015) .......... 23

*Tadych v. Noble Ridge Construction, Inc.*,
200 Wash. 2d 635 (2022) .......... 16

*Torgerson v. One Lincoln Tower, LLC*,
166 Wash. 2d 510 (2009) .......... 11

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018),
*aff'd*, 816 F. App'x 68 (9th Cir. 2020) .......... 22

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) .......... 3, 19

*Valve Corporation v. Abbruzzese*,
No. 2:24-CV-1717-JNW,
2026 WL 1481630 (W.D. Wash. May 27, 2026) .......... *passim*

*Wilmuth v. Amazon.com Inc.,*
No. 2:23-CV-01774-JNW,
2024 WL 5088337 (W.D. Wash. Dec. 12, 2024) .......... 21

*Wiseley v. Amazon.com, Inc.,*
709 F. App'x 862 (9th Cir. 2017) .......... 14, 15



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Wolfire Games, LLC v. Valve Corp.*,
No. 2:21-cv-00563-JCC,
2021 WL 4952220 (W.D. Wash. Oct. 25, 2021) ....................4, 5

*Wu v. Uber Technologies, Inc.*,
186 N.Y.S.3d 500 (Sup. Ct. Bronx Cnty. 2022),
*aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024) ....................15

*Zuver v. Airtouch Communications, Inc.*,
153 Wash. 2d 293 (2004) ....................16

**STATUTES**

28 U.S.C. § 1651(a) ....................22



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION[1]

This action involves 12 Defendants, 11 of whom appear to be users of Valve's Steam platform, and one who is not (Defendant Alshalaldeh).[2] Defendants other than Defendant Alshalaldeh agreed to resolve their claims against Valve in court and have no basis to proceed against Valve in arbitration: their arbitrations should be enjoined. Defendant Alshalaldeh never entered into any arbitration agreement with Valve and her arbitration should likewise be enjoined. (*See* Compl. ¶ 32.) Valve's Complaint thus pleads legally sufficient claims for relief against all those Defendants. Accordingly, the Court should deny Defendants' belated[3] Motion to Dismiss for Improper Venue and Failure to State a Claim, or in the Alternative, for Judgment on the Pleadings.

***Venue Is Proper in This Court.*** Defendants move to dismiss for improper venue under Rule 12(b)(3), but that motion is both substantively and procedurally defective. Defendants contend that an arbitrator must decide which agreement governs as between (i) a prior version of the SSA (the "Superseded SSA," effective April 25, 2023, with an arbitration agreement) and (ii) the updated SSA (the "Controlling SSA," effective September 26, 2024[4], with no arbitration agreement) because the Superseded SSA delegates questions of arbitrability to the arbitrator. But, as the Court concluded in *Valve Corporation v. Abbruzzese*, 2026 WL 1481630 (W.D. Wash. May 27, 2026) ("*Abbruzzese*"), a court must resolve that dispute. *Id.* at *6 n.6. In any event, Rule 12(b)(3) is the incorrect mechanism by which to enforce a forum selection clause. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

---

[1] All emphases are added and internal citations, quotations, and alterations are omitted unless otherwise indicated.

[2] The Motion is brought on behalf of only eight Defendants: Alshalaldeh, Bradley, Copelin, Grunwald, Hooshyar, Kelley, Morgano, and Zlatnik. Defendants Bartell, Bock, King, and Ritter answered (belatedly). (Dkt. 16.) "Defendants" refers to the moving Defendants unless otherwise indicated.

[3] Defendants' response to the Complaint was due on June 16, 2026. (Dkt. 4.) Defendants did not file this motion until June 18, 2026. Defendants did not seek leave for an extension and do not explain their delay.

[4] The SSA has been amended twice since September 26, 2024, including most recently in April 2026. These subsequent amendments do not affect the legal rights of U.S. citizens and are not relevant to this action. The SSA as of September 26, 2024, and the subsequently amended versions of the agreement are referred to collectively as the "Controlling SSA."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Billington*, 2018 WL 6321658, at *3 (C.D. Cal. Jan. 8, 2018).

***Valve States a Claim.*** Defendants argue that *Abbruzzese* compels dismissal. Defendants are wrong. There the Court concluded that those defendants were likely able to show unconscionability based on specific preliminary (disputed) assumptions that are absent here:

- With respect to procedural unconscionability, the Court reasoned that the defendants in *Abbruzzese* might have lacked a meaningful choice whether to enter into the Controlling SSA because declining would mean forfeiting game licenses. Here, the Complaint pleads nothing about Defendants' game licenses.
- With respect to substantive unconscionability, the Court reasoned that enforcing the Controlling SSA would be unfair because the defendants in *Abbruzzese* had expended time and resources in arbitrations that had been pursued "to the verge of relief." Here the Complaint expressly pleads the opposite: none of Defendants' claims have advanced at all.

In short, Defendants cannot show from the face of the Complaint that the Controlling SSA is unconscionable:

*Procedural Unconscionability.* Defendants contend that the forum provision is procedurally unconscionable because they had to choose between keeping their Steam libraries or preserving their arbitration rights. (Mot. 6.) But for a nonessential recreational activity such as playing video games, an agreement cannot be procedurally unconscionable because a user always has the option to forgo the activity. *See Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Courts have accordingly held that it is not unconscionable to offer licensed video games subject to conditions, including potential termination of the license. *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364, at *10 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688 (9th Cir. 2011). There is thus no legal obligation to make licensed video games "available in perpetuity." *Id.* Nor does termination of a license to play a video game result in "forfeit[ing] any property or money." *Leong v. Square Enix of America Holdings, Inc.*, 462 F.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

App'x 688, 689 (9th Cir. 2011). The Complaint pleads that Defendants (other than Defendant Alshalaldeh, who does not appear to be a Steam user at all) had the ability to retain their licenses and continue to pursue arbitration by pausing use of Steam until their arbitrations concluded.

*Substantive Unconscionability.* Defendants argue that the Controlling SSA's forum provision is substantively unconscionable because it terminates already filed arbitrations. (Mot. 6.) But an amended dispute resolution provision may be enforced with respect to claims already asserted in another forum. *See*, *e.g.*, *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026); *Saucedo v. Experian Info. Sols.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023). And the Complaint alleges that these arbitrations have barely commenced. Among other things, no Defendant's claim has been assigned to a merits arbitrator.

Defendants' other contentions are also meritless:

- Defendants contend that Valve cannot seek an injunction under the All Writs Act as a matter of law. That is incorrect. Under the All Writs Act, courts can enjoin an arbitration if it would threaten a court's jurisdiction. *See, e.g.*, *PMI Am., Inc. v. M.B. Int'l*, 2012 WL 13018298, at *7 (N.D. Ga. Nov. 6, 2012).

- Defendants assert that the parties are bound to arbitrate under the Superseded SSA's survivorship clause. Defendants ignore the well-pleaded allegations in the Complaint that the Controlling SSA expressly covers all disputes and replaces prior agreements. (Compl. Ex. 1, §§ 10-11.)

- Defendants argue that Valve's amendment of the SSA was "unilateral" and violated the implied covenant of good faith and fair dealing. But that amendment was mutual and does not implicate the covenant. *See, e.g.*, *Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020). Even if there were a "unilateral amendment" to the SSA, Valve has alleged a valid and good faith reason for that amendment: the arbitration provision had been ruled unenforceable and a putative consumer class action with a putative class definition that encompasses all Valve users, including



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

these Defendants, had been commenced in court on that basis.

- Defendants contend that Valve should be equitably estopped from enforcing the Controlling SSA. That is wrong. Equitable estoppel requires acts that are both "inconsistent" and inequitable. *See Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 340 (1989). Valve has not taken any inconsistent position. Defendants point to the fact that, in 2021, Valve successfully moved to compel seven consumers to arbitrate antitrust claims under a now-superseded August 2020 version of the SSA. *See Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220, at *2 (W.D. Wash. Oct. 25, 2021) ("*Wolfire*"). None of those consumers are Defendants here and none are seeking to proceed under the arbitration agreement in the August 2020 SSA. Further, the Court held that the question whether the arbitration agreement in that SSA was enforceable was for an arbitrator to decide. In 2024, arbitration claimants obtained four arbitral rulings that the arbitration agreement was unenforceable. On that basis, those claimants then commenced a putative nationwide class action and included in the putative class definition *all Steam users*—including Defendants (other than Defendant Alshalaldeh). In the wake of changed circumstances, Valve acted in good faith and presented a modified SSA to its users that removed the arbitration agreement. Valve did not act "inconsistently": it merely acted in response to new circumstances.

***Defendants Cannot Move Under Rule 12(c).*** Defendants seek in the alternative judgment on the pleadings pursuant to Rule 12(c), but that motion must be denied for the independent reason that the pleadings have not yet closed.

## II. <u>BACKGROUND</u>

### A. Valve, the Steam Platform, and the SSA

Valve is a video game developer, publisher, and digital distribution company. (Compl. ¶ 51.) Valve offers an online platform called Steam, where consumers can purchase, play, and interact with their friends about video games. (*Id.*) For an individual to create a Steam account and become a Steam user, that person must first agree to the SSA. (*Id.* ¶ 52.) Valve has periodically modified the SSA since it was first implemented in 2003. (*Id.* ¶ 53.) In 2012, Valve added an arbitration



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

agreement, providing that users and Valve "agree to resolve all disputes and claims between us in individual binding arbitration" with the AAA. (*Id.* ¶ 54.) Defendants (other than Defendant Alshalaldeh) first agreed to the SSA between 2004 and 2018, continued to use Steam, and agreed to the SSA every time they made a purchase. (*Id.* ¶ 55.) Defendant Alshalaldeh does not have a Steam account and has not otherwise agreed to arbitrate with Valve. (*Id.* ¶¶ 86-89.)

**B. *Wolfire* Plaintiffs Commence a Consumer Class Action Against Valve**

In 2021, two video game developers and seven consumer plaintiffs initiated *Wolfire* and two other putative class actions against Valve alleging violations of the federal antitrust laws. The Court consolidated the two other actions into *Wolfire*.

When the plaintiffs filed suit, the applicable SSA was an August 2020 version that contained an arbitration provision providing for AAA arbitration and a class action waiver. (Compl. ¶ 2.) Accordingly, Valve moved to compel the seven consumer plaintiffs (none of whom are Defendants here) to arbitration under that version of the SSA. The Court granted Valve's motion notwithstanding a challenge to the arbitration provision's enforceability because it found that enforceability was an issue to be decided by the arbitrator. The Court stayed the *Wolfire* action as to the consumer plaintiffs. *See Wolfire*, 2021 WL 4952220, at *3.

**C. Defendants' Counsel Pursues AAA Arbitrations Against Valve**

Defendants' Counsel Mason & Perry LLP ("Mason") and Siri & Glimstad LLP (together with Mason, "Defendants' Counsel") are attempting to pursue arbitrations on behalf of 19,903 other claimants, in addition to Defendants and the Defendants who answered the Complaint (for 19,915 claimants in total). (Compl. ¶ 10.) They are attempting to pursue arbitrations under the Superseded SSA, not the August 2020 SSA under which other individuals were compelled to arbitrate in *Wolfire*.

- On December 15, 2023, Defendants' Counsel submitted 14,992 arbitration demands with the AAA pursuant to the Superseded SSA (the "December 2023 Arbitrations"), including demands for Defendants Grunwald, Kelley, Morgano, and Zlatnik. (*Id.* ¶ 11.)
- In April 2024, Defendants' Counsel submitted another 5,000 claims with the AAA



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

pursuant to the Superseded SSA (the "April 2024 Arbitrations"), including demands for Defendants Alshalaldeh, Bradley, Copelin, and Hooshyar. (*Id.* ¶ 12.)

To date, no merits arbitrators have been appointed in connection with these arbitrations. (*Id.* ¶¶ 20, 24-28.)

On April 10, 2026, Defendants' Counsel submitted claims on behalf of Defendants Dylan Bartell, Lincoln Bock, Nicholas King, and Marissa Ritter. (*Id.* ¶ 13.) On April 15, 2026, Defendants' Counsel submitted their arbitration demands to the AAA. The Motion is not brought on behalf of these Defendants, who responded to the Complaint by filing an Answer. (Dkt. 16.)

**D. Valve Removes the Arbitration Provision**

On July 8, 2024, in four AAA arbitrations commenced by Bucher Law PLLC, a merits arbitrator determined that the arbitration clause in the Superseded SSA was unenforceable. (Compl. ¶ 14.) The arbitrator dismissed the four arbitrations before him on that basis. (*Elliott v. Valve Corporation*, No. 2:24-cv-01218 (W.D. Wash. filed Aug. 9, 2024), Dkt. 1 ("*Elliott* Compl.") ¶¶ 13, 30-31.)

On August 9, 2024, Bucher Law commenced a new putative antitrust class action against Valve naming those four claimants as plaintiffs. That action, *Elliott*, is brought on behalf of a putative class of all Valve consumers, and asserts claims similar to the antitrust claims Defendants are pursuing against Valve. (*Elliott* Compl. ¶ 167.) It contends that the Superseded SSA's arbitration provision is unenforceable as to all Steam users. (*Id.* ¶ 13.) *Elliott* has been consolidated with *Wolfire*.

On September 26, 2024, in light of the arbitral determination that the SSA's arbitration provision was unenforceable and the filing of the *Elliott* action, Valve gave notice to Steam users, including Defendants who are Steam users, that it was amending the SSA to remove both the arbitration provision and the class action waiver. (Compl. ¶ 56.) The dispute resolution section of the Controlling SSA now provides:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

(*Id.* ¶ 5.)

The Controlling SSA also includes a merger clause, which provides:

> This Agreement . . . constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements.

(Compl. ¶ 85.)

Starting on September 26, 2024, Valve provided notice to Defendants who are Steam users in several ways:

- **Electronic Mail.** Beginning on September 26, 2024, Valve provided email notice of the change in the SSA to all U.S. customers. (Compl. ¶ 59.)
- **In-Client Pop-Up.** Beginning on September 26, 2024, Valve provided notice of the update through a pop-up that appeared when users logged into the Steam client. The pop-up enabled users to agree to the Controlling SSA by checking a box stating: "I agree to the Updated Steam Subscriber Agreement" and then clicking, "Accept Updated SSA." (*Id.* ¶ 64.)
- **Blog Post.** Beginning on September 26, 2024, Valve published a blog post on Steam providing notice of the amended SSA. (*Id.* ¶ 68.)
- **Steam Website.** The Controlling SSA has been available online from September 26, 2024, to the present, in 10 languages. (*See* https://store.steampowered.com/subscriber_agreement/.)

Those notices were consistent with the modification requirements in the Superseded SSA: "This Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." (Mason Decl. Ex. 1 at § 8(A).)

The Superseded SSA also provided for amendment through notice followed by continued use:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 (30) days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms.

(*Id.* at § 8(B).) That SSA explained that if the user did not agree to the updated SSA, he or she could cancel his or her Steam account or cease using the service. (*Id.*) Consistent with these terms, the email notice provided: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 62.)

On September 27, 2024, Valve notified Defendants' Counsel of the amendment and offered to reimburse their clients' arbitration filing fees. (*Id.* ¶ 90.) On October 1, 2024, Defendants' Counsel accepted Valve's offer to reimburse them for their clients' AAA filing fees, including Defendants' fees. (*Id.* ¶ 91.) Valve reimbursed the fees. (*Id.*)

### E. The AAA Administratively Stays the December 2023 Arbitrations, and Defendants' Counsel Commences Litigation

On May 15, 2025, the AAA administratively stayed the December 2023 Arbitrations and 14,907 other December 2023 Arbitrations at Defendants' Counsels' request. (Compl. ¶ 92.) The AAA issued Valve an invoice of $20.875 million in case management fees. Mason then commenced duplicative court proceedings in an effort to compel Valve to pay those AAA fees:

(1) On May 2, 2025, Defendants' Counsel filed a putative class action, *Welty v. Valve Corp.*, No. 2:25-cv-02450 (W.D. Wash) (Dkt. 1), seeking an order compelling Valve to pay the case management fees for claimants who are Steam Users. Defendant Hooshyar is a member of the putative class in *Welty*.

(2) On June 11, 2025, Defendants' Counsel filed a motion for sanctions in *Wolfire* demanding that Valve pay the case management fees for 14,911 claimants as a "sanction." *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JNW (Dkt. 467).

(3) On August 5, 2025, Defendants' Counsel filed another putative class action, *Smith v. Valve Corp.*, No. 2:25-cv-01478-JNW (W.D. Wash.) (Dkt. 1), again seeking an order



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

compelling Valve to pay the fees. Defendants Grunwald, Kelley, Morgano, and Zlatnik are members of that putative class.

### F. Defendants' Counsel Asks the AAA to Proceed With Defendants' Arbitrations

On February 9, 2026, a Process Arbitrator stayed the April 2024 Arbitrations "pending resolution by a court of the issue of whether the [Superseded] SSA or [Current] SSA governs." (Compl. ¶ 95.)

In April 2026, Defendants' Counsel asked the AAA to proceed with administering all Defendants' arbitrations. (*Id.* ¶¶ 100-102.) On April 17, 2026, the AAA assigned the arbitrations of Defendants Morgano, Grunwald, Zlatnik, and Kelley to a case administrator for administration. (Compl. ¶ 103.) The other eight Defendants, including four Defendants who are parties to this Motion (Alshalaldeh, Bradley, Copelin, and Hooshyar) and four Defendants who answered the Complaint (Bartell, Bock, King, and Ritter) have not been assigned for administration. (*Id.* ¶¶ 27-28.)

On April 28, 2026, the AAA informed the parties that it would proceed to appoint merits arbitrators for Defendants Bartell, Bock, King, and Ritter. (Compl. ¶¶ 106-112.)

None of Defendants' arbitrations have been assigned to a merits arbitrator. (Compl. ¶ 20.)

## III. <u>ARGUMENT</u>

### A. The Court Should Deny Defendants' Rule 12(b)(3) Motion as Substantively and Procedurally Defective

Defendants move to dismiss under Rule 12(b)(3) for improper venue on the ground that the Superseded SSA contains a delegation clause providing that an arbitrator must decide arbitrability. (Mot. 4.) But a unanimous Supreme Court rejected this precise argument just two years ago in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). There, as here, the parties disputed which agreement applied between a first agreement with an arbitration agreement and delegation clause and a second agreement with no arbitration agreement. There, as here, the defendant argued that an arbitrator must decide arbitrability pursuant to the delegation clause in the first agreement. The Court disagreed, holding that the court must decide which agreement applies even where there is a "delegation clause



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

in the first contract." *Id.* at 150. That holding controls here and disposes of Defendants' venue motion. *See Abbruzzese*, 2026 WL 1481630, at *6, n. 6 (concluding that *Coinbase* applied and that under that decision the court must decide which agreement governs).

The motion must also be denied because "Rule 12(b)(3) is the wrong mechanism to enforce a forum-selection clause." *Merrill Lynch*, 2018 WL 6321658, at *3. Rather, the Supreme Court has held that such a motion must be made under § 1404(a) and the *forum non conveniens* doctrine. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 61 (2013); *see also Milliner v. Bock Evans Fin. Couns., Ltd.*, 114 F. Supp. 3d 871, 876 (N.D. Cal. 2015) (denying Rule 12(b)(3) motion to dismiss as improper method for enforcing a forum selection clause). Defendants cite the Ninth Circuit's 1996 decision in *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996), for the principle that this Circuit recognizes motions to enforce forum selection clauses as motions to dismiss under Rule 12(b)(3), but the Supreme Court held otherwise in 2013. *See Atl. Marine Constr. Co., Inc.*, 571 U.S. at 61. Defendants' other case, *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 294 F.3d 1171 (9th Cir. 2002), also predates *Atlantic Marine*.

### B. The Court Should Deny Defendants' Rule 12(b)(6) Motion Because Valve States a Claim

#### 1. The Well-Pleaded Allegations of the Complaint Do Not Provide Any Basis For Holding The Controlling SSA's Forum Provision Unconscionable

Defendants assert that *Abbruzzese* involved the same facts and the same legal conclusions and thus the Court's analysis in *Abbruzzese* compels dismissal here. (Mot. 5-7.) That is incorrect: the decision in *Abbruzzese* was issued under a preliminary injunction standard as to the defendants in that case based on a preliminary and distinguishable record.

In *Abbruzzese*, the Court concluded that the retroactive forum provision is likely procedurally and substantively unconscionable "as applied to [the *Abbruzzese*] Defendants." *Abbruzzese*, 2026 WL 1481630, at *10. The *Abbruzzese* Court's conclusion that the forum provision in the Controlling SSA was likely unconscionable as to the defendants in that case was based on, among other things, the Court's preliminary (disputed) findings that:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

- the defendants might lose money spent on licensed games if they did not agree to the Controlling SSA; and
- the defendants' arbitrations had substantially progressed, some to the "brink" of final awards, by the time the Court heard the motion.

While Valve contends that these two preliminary findings should have had no bearing on any unconscionability analysis, there is nothing in the Complaint here about Defendants' spend on Steam. And the Complaint expressly pleads that nothing substantive has happened in any of the Defendants' arbitrations.

In short, applying the motion to dismiss standard, Defendants fail to show that the forum provision in the Controlling SSA is unconscionable as to *these Defendants* on the face of this Complaint. *See Alaska Airlines, Inc. v. Carey*, 2008 WL 743946, at *2 (W.D. Wash. Mar. 18, 2008) (denying motion to dismiss; "at the 12(b)(6) stage, it cannot be concluded that a motion to dismiss is appropriate" on grounds that contract is illusory or unconscionable).

(a) The Complaint Should Not Be Dismissed Based on Procedural Unconscionability

Defendants assert that the forum provision in the Controlling SSA is procedurally unconscionable. But this determination is highly fact-specific and cannot be made on the face of the pleading. "Procedural unconscionability is determined in *light of the totality of the circumstance*s, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were 'hidden in a maze of fine print.'" *Torgerson v. One Lincoln Tower, LLC*, 166 Wash. 2d 510, 518-19 (2009), *as corrected* (July 16, 2009). The allegations in the Complaint do not establish that the forum provision in the Controlling SSA is procedurally unconscionable (and it is not).

As a threshold matter, courts, including Washington courts and other courts in the Ninth Circuit, hold that a contract governing a "nonessential recreational activity" cannot be procedurally unconscionable because "the consumer always has the option of forgoing activity." *Bassett*, 2015 WL 1298644, at *11 (agreement not unconscionable even though plaintiff could not access online



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

features of games he purchased without agreeing to terms); *see also*, *A.C. ex rel. Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *3 (W.D. Wash. Apr. 29, 2021) (plaintiff "had a meaningful choice to accept the delegation provision, to opt out of the arbitration clause (including the delegation provision), or to reject the entire [user agreement] and return his Nintendo"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sep. 20, 2011) (iPhone gaming "apps such as 'Angry Birds' or 'Plants versus Zombies' are nonessential recreational activities," creating "difficulties" for challenging Apple's terms "both with respect to the procedural and substantive element of unconscionability"); *Bauer v. Atlantis Events, Inc.*, 2014 WL 12603112, at *3 (C.D. Cal. Mar. 5, 2014) (even though plaintiffs did not receive a full refund upon cancellation, cruise cancellation policy was not unconscionable since plaintiffs could have forgone cruise or "booked another type of vacation"), *aff'd*, 645 F. App'x 545 (9th Cir. 2016); *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) ("fatal to finding oppression here," Facebook's social media service "is not one of life's necessities"); *DeAsis v. YMCA of Yakima*, 183 Wash. App. 1018, 2014 WL 4376038, at *5-6 (Wash. Ct. App. Sep. 4, 2014) (health club membership agreement was not a procedurally unconscionable contract of adhesion because "a health club is not essential"). Video games are non-essential recreational activities. *Bassett*, 2015 WL 1298644, at *11; *Nintendo*, 2021 WL 1840835, at *3.

The Court in *Abbruzzese* concluded that the defendants there could likely show that to reject the Controlling SSA, the consumer had to abandon already purchased game licenses. But that does not change the legal analysis. In *Bassett*, for example, a consumer plaintiff purchased a video game and, after the purchase, was required to agree to an arbitration agreement before registering his online account. The plaintiff argued that the defendant "effectively forced him to agree to the [arbitration agreement]" because "[b]y the time he tried to access the product's online play feature, [he] had already purchased the game and could not return it." Opp'n to Motion to Compel at 24, *Bassett v. Elec. Arts Inc.*, No. 1:13-cv-04208-MKB-SMG (E.D.N.Y. filed May 23, 2014), Dkt. 29. The court rejected this argument, holding that there was "no need to evaluate" unconscionability because,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

although the plaintiff had already made his purchase, he could forgo playing his video game. *Bassett*, 2015 WL 1298644, at *11 (citing cases).

Nor do Defendants show procedural unconscionability under any of the factors courts consider even assuming a contract for a nonessential recreational activity could be procedurally unconscionable (and it cannot):

*First*, Defendants cannot show based on the Complaint that the manner in which the parties entered into the Controlling SSA renders the forum selection clause unconscionable. The Complaint alleges the parties entered into the bilateral agreement through a "Pop-up Notice" or "purchase-screen check box" that the Court referred to as "conventional clickwrap mechanisms." *Abbruzzese*, 2026 WL 1481630, at *7. This Court and other courts routinely enforce agreements entered into through these means. *Id*.

In *Abbruzzese*, this Court concluded that the defendants could likely show that "[t]o reject the [Current] SSA, the consumer had to abandon the only tangible benefit offered to her by Valve: access to her Steam account and the game license(s) she had already bought." *Id*. at *8. But the Complaint's allegations state otherwise: Valve's email and pop-up notices specified that Steam users could reject the proposed modifications *and* retain the licenses they had purchased to use games on Steam by discontinuing use of Steam: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 62.)[5] This meant that Defendants could keep their Steam accounts and continue arbitrating under the Superseded SSA. The only condition was that they forgo using those accounts while their arbitrations were ongoing. And the Complaint pleads nothing about the Defendants' purchased game licenses.

Further, it is neither procedurally nor substantively unconscionable to offer licensed video

[5] Section 8(B) of the Superseded SSA did not create "ambiguity in the rejection terms," *Abbruzzese*, 2026 WL 1481630, at *8, and in fact clarified in its concluding sentence that "[i]f you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*." (Mason Decl. Ex. 1 § 8(B).)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

games subject to conditions, including potential termination of the license. *See, e.g.*, *Leong*, 2010 WL 1641364, at *10. There is thus no legal obligation to make licensed video games "available in perpetuity." *Id.* In *Leong*, the plaintiffs purchased a license to play an online video game, and the user agreement made clear that the purchaser did not own any of the software, game data, or characters. *Id.* at *6. The court rejected the plaintiffs' argument that the agreement's terms permitting the developer to cancel or revoke the user's license were unconscionable under California law. *Id.* at *10. The Ninth Circuit affirmed, explaining that the plaintiffs' "allegations are insufficient to show that they forfeited any property or money" when their accounts were terminated: "the game's user agreement, which each user must accept prior to playing the game, states that users do not own the game software or data." *Leong*, 462 F. App'x 688, at 689; *see also McKee v. Audible, Inc.*, 2017 WL 4685039, at *14 (C.D. Cal. July 17, 2017) (finding that although Amazon and Audible "provide users credits as part of their Audible subscription, and those credits may be effected negatively should a user wish to terminate its membership," "[t]hat reality does not render the arbitration provision unconscionable"). The same is true here. The Superseded SSA explicitly states that Valve grants users "a non-exclusive license and right." (Ex. 4, § 2(A).)

Regardless, courts enforce modified consumer contracts where there is no option to reject the new terms and continue using the service. *See, e.g.*, *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) (rejecting contention that plaintiffs did not consent through continued use where terms "expressly provide that users' 'continued use of Alexa' after any modifications to that agreement 'constitutes [their] acceptance of the terms' therein"), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024). At the time Defendants purchased any game license, they did so with full notice that continued use of that license was contingent on agreeing to the SSA and any future amendments. (Mason Decl. Ex. 1 § 8(B).) The Complaint alleges that Defendants had a reasonable opportunity to understand the terms of the forum provision in the Controlling SSA based on the notices provided. (Compl. ¶¶ 56-76); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (action button, next to a hyperlinked consumer agreement, was "in sufficient proximity



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to give" plaintiff "a 'reasonable opportunity to understand' that he would be bound by additional terms").

Although Valve amended the SSA at the same time for all Steam users worldwide, the Court found that the claimed procedural unconscionability in *Abbruzzese* was compounded by Valve "push[ing]" the amendment past defendants' lawyers. *Abbruzzese*, 2026 WL 1481630, at *8. But nothing on the face of the Complaint indicates that Defendants agreed to the Controlling SSA before they had an opportunity to consult with their counsel. To the contrary, the Complaint alleges that Valve notified Defendants' Counsel of the update before any Defendant assented to it. (Compl. ¶¶ 56, 90.)

In any event, there is nothing improper—let alone procedurally unconscionable—about a business communicating directly with its entire consumer base to present a universally applicable update to its user agreement, even where there is pending litigation involving a small number of those consumers. *See, e.g.*, *Wu v. Uber Techs., Inc.*, 186 N.Y.S.3d 500, 541 (Sup. Ct. Bronx Cnty. 2022) (claimants' "submissions are also devoid of any attempt to demonstrate that the January 2021 Pop-Up constitutes an unauthorized ex parte communication violative of Rule 4.2"), *aff'd*, 197 N.Y.S.3d 1 (App. Div. 2023), *aff'd*, 260 N.E.3d 1060 (N.Y. 2024); *SCPS LLC*, 2026 WL 96898, at *9 (rejecting contention that businesses went "around counsel's back" to obtain assent to updated agreement).

*Second*, Defendants had a reasonable opportunity to understand the terms of the forum provision in the Controlling SSA based on the notices provided as described above. *See Wiseley*, 709 F. App'x at 864 (action button, next to a hyperlinked consumer agreement, was "in sufficient proximity to give" plaintiff "a 'reasonable opportunity to understand' that he would be bound by additional terms").

*Third*, Valve presented the choice to Defendants (and every other Steam user) in clear terms. The forum provision in the Controlling SSA was not hidden in a maze of fine print. As the Complaint explains, Valve's notices expressly called out the core change reflected in the forum provision—that, under the Controlling SSA all disputes must proceed in court— (i) in a concise email notice, (ii) in a



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

pop-up notice on the Steam platform, (iii) on a banner to the Controlling SSA presented after the new agreement was launched, and (iv) through a blog post on the Steam platform. (Compl. ¶¶ 56-76.) The notices each linked to the Controlling SSA, and the forum clause was in the same size font as the other key provisions and set off in Section 10, which is clearly labeled "APPLICABLE LAW/JURISDICTION." (Compl. Ex. 1 § 10).

(b) The Complaint Presents No Basis to Conclude that the Controlling SSA's Forum Provision Is Substantively Unconscionable

Defendants argue that the Court in *Abbruzzese* concluded that "[t]he retroactive forum clause is likely substantively unconscionable as applied to Defendants." (Mot. 6.) Valve respectfully submits that this conclusion was legally erroneous. But regardless, the facts on which the Court based its decision there are distinguishable from those pleaded here.

A provision of a contract is substantively unconscionable where it is "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wash. 2d 293, 303 (2004). "A contract provision becomes substantively unconscionable when it [(i)] eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, [(ii)] is also not prominently set out in the contract, is not negotiated or bargained for, and [(iii)] provides no benefit to the affected party." *Tadych v. Noble Ridge Constr., Inc.*, 200 Wash. 2d 635, 645-46 (2022). Defendants cannot make any of these showings at the pleading stage or otherwise.

*First*, the Controlling SSA is not impermissibly one-sided. Substantive unconscionability is assessed "at the time the contract is made." *Jeffery v. Weintraub*, 32 Wash. App. 536, 544 (Ct. App. 1982). Therefore, the question is whether enforcing that provision would have been one-sided *when the parties entered into the agreement*, on or before December 2024 for all Defendants but Bartell and March 2025 for Defendant Bartell. It would not. As the Complaint alleges, when the parties entered into the Controlling SSA, virtually nothing had happened in Defendants' arbitrations. As of April 2026, only four of Defendants' arbitrations have been assigned for administration; the remaining arbitrations have not been assigned. (Compl. ¶¶ 24-27.) None of Defendants' arbitrations



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

have been assigned to a merits arbitrator. (*Id.* ¶ 20.) The only step Defendants have taken to proceed on the merits is to submit three-page arbitration Demands to the AAA, all of which are substantially identical. (*Id.* ¶¶ 11-12, 28.) And Defendants have incurred no administration expenses: Valve reimbursed Defendants' Counsel for the AAA filing fees in all of their cases. (*Id.* ¶¶ 90-91.) Thus, contrary to Defendants' assertion that the factual scenario in *Abbruzzese* is "indistinguishable" from the factual scenario here "in all material respects" (Mot. 7), Defendants' arbitrations are in a far different procedural posture than the *Abbruzzese* defendants. There, many defendants had proceeded to final award or were close by the time the Court denied the injunction. *Abbruzzese*, 2026 WL 1481630, at *4.

As the Complaint alleges, Defendants have not suffered any one-sided financial prejudice from Valve's amendment. Counsel was proceeding at all times on contingency and with the benefit of litigation funding. (Compl. ¶ 30.) In addition, Valve offered to reimburse Defendants' AAA filing fees—an offer Defendants' Counsel accepted. (*Id.* ¶¶ 90-91.)

Moreover, a dispute resolution provision in an amended agreement is enforceable as to pending claims if the provision, like the provision in the Controlling SSA, expressly provides for retroactive effect. For example, the plaintiff in *Saucedo* had not agreed to arbitrate before filing a putative class action lawsuit in court, but he later accepted an arbitration agreement. The court enforced that agreement as applied to the pending litigation, explaining that "[t]he Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." 2023 WL 4708015, at *6 (collecting cases).

Courts apply the same rationale to amendments that remove an arbitration clause or that change the arbitral forum for pending disputes. In *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), the Eleventh Circuit enforced a post-litigation update to a contract that removed the contract's arbitration clause. The court rejected the argument that parties could not contract to "*remove* from arbitration an existing controversy." *Id.* at 1125. In *SCPS LLC*, 2026 WL 96898, the court enforced an amendment that changed the arbitral forum for disputes after arbitration claimants



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

had already submitted notices of dispute with the forum specified in the original agreement. *Id.* at *10-11. The court explained that "the result would be the same even if the [claimants] had assented [to the updated agreement] *after* initiating arbitrations with the AAA"— that is, if the arbitrations were already pending. *Id.* at *9; *see also Tile, Inc.*, 2026 WL 594859, at *1-5 (enforcing updated agreement that changed the arbitral forum for plaintiffs' pending claims).[6]

*Second*, the forum provision in the Controlling SSA does not eliminate any established statutory rights. It permits Defendants to proceed in court. Nor does it extinguish claims through operation of statutes of limitations. Defendants are putative class members in *Wolfire*, which remains pending before the Court and tolls the statute of limitations for all putative class members, including Defendants; there is no risk that their claims will become time-barred if the Controlling SSA is enforced. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-53 (1974) (pending class action tolls statute of limitations for absent class members).

### 2. The Controlling SSA Does Not Violate the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that "Valve's unilateral removal of the arbitration clause mid-proceeding" violates the implied covenant of good faith and fair dealing, which independently bars Valve's claims. (Mot. 11.) Defendants' argument is wrong for numerous reasons:

*First*, Defendants fail to show that Valve exceeded the rights that it was expressly granted by the Superseded SSA in amending that agreement. The implied covenant "requires only that the parties perform in good faith the obligations imposed by their agreement" and does not "inject substantive terms into the parties' contract." *Badgett v. Sec. State Bank*, 116 Wash. 2d 563, 569, 574 (1991). "[T]he covenant does not come from thin air, but from the promises the parties have actually made to each other through contract." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025). "[I]f the defendant did what it was expressly given the right to do, there can be no breach" of the implied covenant because "the conduct is, by definition, within the reasonable

[6] *See* Declaration of Steve Klinkner, Ex. B § 25.C, Ex. E § XVII.B, Ex. I at 23, *Ireland-Gordy v. Tile, Inc.*, No. 3:23-cv-04119-RFL, Dkt. No. 34.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

expectation of the parties." *Missing Link, Inc. v. eBay, Inc.*, 2008 WL 3496865, at *5 (N.D. Cal. Aug. 12, 2008). Here, the Superseded SSA expressly included mutual and unilateral amendment procedures. (Mason Decl. Ex. 1 § 8(A)-(B).) Defendants do not dispute that Valve acted consistently with these amendment procedures.

*Second*, the implied covenant does not restrict parties from agreeing to mutual modifications. The covenant "ordinarily works to save provisions allowing *unilateral* modifications—even retroactive ones—from being considered illusory, since the covenant bars the party with unilateral power to modify from using that power capriciously." *Pilon*, 769 F. Supp. 3d at 295 (emphasis in original). The covenant, however, "does not prevent parties from mutually modifying their contracts." *Id.*; *Trudeau*, 816 F. App'x at 70 n.1. Parties are always free to agree to enter into a new agreement that supersedes a prior agreement, and such agreements may apply retroactively, including to accrued claims. *Pilon*, 769 F. Supp. 3d at 295 (implied covenant did not prevent mutual modification even though amendment occurred "after . . . the accrual of [plaintiff's] claim").

Here, the Complaint alleges that the update was mutual, not unilateral. For online transactions, "a determination of mutual assent often turns on whether a consumer had reasonable notice of the terms." *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1189 (W.D. Wash. 2024). As set forth in Part II.D., Valve provided notice through several channels and Steam users could agree to the new terms through continued use of Steam. Indeed, the Court found Valve's notices were conspicuous. *Abbruzzese*, 2026 WL 1481630, at *7. The email notice Valve sent to Defendants (other than Defendant Alshalaldeh) stated: "[T]he updated [SSA] will become effective on November 1, 2024, unless you delete or discontinue use of your Steam account before then." (Compl. ¶ 62.) They did not delete or discontinue use of their Steam accounts by November 1, 2024. (*Id.* ¶¶ 77-82.) Thus, this was a mutual amendment. *See Pilon*, 769 F. Supp. 3d at 290-91, 295. Defendants' authority, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (Mot. 11), addressed unilateral amendments, and its reasoning "does not extend to mutual modifications." *Pilon*, 769 F. Supp. 3d at 295 (distinguishing *Cobb*); *accord Trudeau*, 816 F. App'x at 70 n.1.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Third*, even if, contrary to the well-pleaded allegations in the Complaint, the amendment was considered "unilateral," it was made in good faith. Valve amended the SSA only after arbitral rulings held that the arbitration provision in the Superseded SSA was unenforceable and a putative class action was commenced on that basis. (Compl. ¶ 3.) Although no additional notice was required, the day after the amendment, Valve notified Defendants' Counsel and offered to reimburse Defendants' arbitration filing fees. (*Id.* ¶ 90.) The amendment gave all parties comfort that their disputes could be adjudicated in one forum through an orderly, final, and binding process.

**3. Equitable Estoppel Is Inapplicable Here**

Defendants argue that "Valve should be equitably estopped from repudiating the arbitration it demanded." (Mot. 12.) But Valve did not demand arbitration as to these Defendants. *See Skillern v. Peloton Interactive, Inc.*, 2022 WL 3718279, at *4 (S.D.N.Y. Aug. 29, 2022) (defendant did not "waive[] its ability to arbitrate completely distinct actions against completely different parties" by defaulting in an earlier arbitration brought by different parties); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) ("Plaintiff fails to point the Court to any cases in which allegedly inconsistent conduct in a separate case involving a different party can waive the right to arbitrate."); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd."). Moreover, equitable estoppel requires "inconsistent" and inequitable acts. *See Saunders*, 113 Wash. 2d at 340. Valve has not taken inconsistent positions as to these Defendants. Valve filed a motion to compel arbitration as to seven nonparties *before* an arbitrator ruled that the Superseded SSA was unenforceable, *before* a new class action was filed based on those rulings, and *before* Valve removed the arbitration provision. (Compl. ¶ 3.) And more fundamentally, as "[a]rbitration is a matter of contract and consent," *Coinbase*, 602 U.S. at 145, parties have the right to agree to change the forum to resolve pending disputes, *see Saucedo*, 2023 WL 4708015, at *6.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### 4. The Controlling SSA's Dispute Resolution Provision Is Enforceable Notwithstanding the Survivorship Clause in the Superseded SSA

Defendants argue that the survivorship clause in Section 9D of the Superseded SSA mandates that the parties arbitrate their claims. (Mot. 9.) But when Valve implemented the Controlling SSA, it superseded the parties' previous agreement and removed the arbitration provision. (Compl. ¶ 3.) Defendants impermissibly ask this Court to ignore these allegations. *See Wilmuth v. Amazon.com Inc.*, 2024 WL 5088337, at * 6 (W.D. Wash. Dec. 12, 2024).

Defendants' argument lacks merit for another reason: the survivorship clause in the Superseded SSA applies only where the agreement expires or is terminated. As the Complaint explains, the Superseded SSA did not expire and was not terminated. Rather, the parties agreed to amend the SSA to remove the arbitration agreement. (Compl. ¶ 4.) The Steam user Defendants could have terminated their Steam accounts, but they did not do that (and, more fundamentally, nowhere does the Complaint allege that). Instead, they agreed to the Controlling SSA, which expressly provides that it "constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements." (*Id.* ¶ 6.) With respect to existing customers, it specifically states: "If you were a Subscriber before" September 24, 2024, the Controlling SSA "replaces and supersedes your existing agreement with Valve." (Compl. Ex. 1 at § 11.)

Further, courts routinely hold that a dispute resolution provision in an updated agreement is enforceable when the agreement plainly articulates that intent, even if the superseded agreement contained a survivorship clause. In *Dasher*, the court concluded that a new agreement without an arbitration clause superseded and applied retroactively to foreclose arbitration under a prior agreement containing an arbitration clause. 745 F.3d at 1127. Although the claim was originally asserted when the agreement had an arbitration clause, the court reasoned that the parties "expressed their clear and definite intent to execute" the new agreement "to supersede" the prior agreement, and that intent controlled. *Id.* at 1117. The court rejected the argument that "there is . . . no statutory authorization permitting parties to *remove* from arbitration an existing controversy." *Id.* at 1125



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(emphasis in original). The court reasoned that, because "arbitration is simply a matter of contract," courts "should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it." *Id.* (emphasis in original). Defendants do not cite authority to the contrary.

Consequently, the mutually agreed Controlling SSA superseded and extinguished the Superseded SSA—and with it, the arbitration agreement in the Superseded SSA. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878-79 (N.D. Cal. 2018) (enforcing updated arbitration clause retroactively to accrued claims even though prior agreement stated that "changes to the terms will not apply retroactively" because new terms "extinguished" the prior agreement between the parties), *aff'd*, 816 F. App'x 68 (9th Cir. 2020); *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (enforcing updated agreement that "contains an integration clause"), *aff'd*, 669 F. App'x 487 (9th Cir. 2016). Thus, the Motion should be denied even if the forum provision in the Controlling SSA is deemed unenforceable.

**5. Valve Has Pleaded An All Writs Act Claim**

Under the All Writs Act, courts may enjoin an arbitration if it would threaten the court's jurisdiction. *See* 28 U.S.C. § 1651(a). For example, in *PMI America*, the court issued a preliminary injunction pursuant to the All Writs Act when, "[h]aving concluded that the arbitration agreement [was] not binding on [the defendant] in his individual capacity," "allowing the arbitration to proceed against him in that capacity would undermine and directly threaten the Court's holding that he did not agree to arbitration." 2012 WL 13018298, at *8; *see also Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 534 F. Supp. 2d 1290, 1325 (S.D. Fla. 2008) (issuing "All Writs Act Injunction to enjoin the arbitration proceedings between Aventura and Goodwill in order to protect my jurisdiction").

Defendants' three contentions to the contrary are without merit:

*First*, Defendants argue that the All Writs Act claim "cannot be used to revive the forum-switching theory this Court has rejected." (Mot. 8.) Defendants cite *Clinton v. Goldsmith*, 526 U.S.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

529 (1999), and *Singh v. Covington Water District*, 190 Wash. App. 416 (Wash. 2015), to support the proposition that the Act "authorizes writs 'in aid of'. . . jurisdiction—not writs that independently enforce unenforceable contract terms." (Mot. 8.) Neither case is apposite. *Clinton* involved a service member who requested and obtained an injunction from the Court of Appeals for the Armed Forces against dropping the court-martialed service member from the Air Force rolls. 526 U.S. at 538-39. The Supreme Court reversed because the injunction was neither in aid of that court's jurisdiction nor necessary. *Id.* at 540. *Singh* does not even discuss the All Writs Act.

*Second*, Defendants argue that their arbitrations do not "'imperil' this Court's ability to adjudicate *Wolfire* or any related proceeding" because there is no certified class that covers Defendants. (Mot. 8.) *Wolfire* is brought on behalf of a putative class that includes Defendants and encompasses all of Defendants' claims and the relief Defendants seek in arbitration. (Compl. ¶¶ 123, 127.) Defendants' Counsel have (i) filed a motion for sanctions in *Wolfire* seeking an order requiring Valve to pay the case management fees in Defendants' arbitrations; (ii) filed a putative class action in *Smith* seeking the same relief; and (iii) filed another putative class action in *Welty* seeking the same relief. (*Id.* ¶¶ 22, 118, 130, 154.) Thus, it would threaten the jurisdiction and any judgment of the courts in *Wolfire*, *Smith*, and *Welty* for Defendants' arbitrations to proceed because it could result in a ruling inconsistent with a ruling of the *Wolfire*, *Smith*, and/or *Welty* courts. (*Id.* ¶ 97.) Defendants' authority is not to the contrary. *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015), does not even mention the All Writs Act.

*Third*, Defendants argue that "the FAA disfavors mid-arbitration judicial interference." (Mot. 8.) But the cases on which Defendants rely involve requests for court interference with interim orders issued during arbitration where the parties indisputably agreed to arbitrate. *See In re Sussex*, 781 F.3d 1065, 1070-76 (9th Cir. 2015) (rejecting request to overturn the AAA's refusal to remove an arbitrator); *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251-52 (9th Cir. 1973) (rejecting challenge to arbitrator's choice of locale). Here, Valve is not asking the Court to interfere mid-arbitration with a decision delegated to an arbitrator or arbitration provider. Rather, Valve is asking



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the Court to decide an issue that this Court has already concluded is within its authority: whether an arbitration agreement exists. *Abbruzzese*, 2026 WL 1481630, at *6 n.6.

### C. The Court Should Deny Defendants' Rule 12(c) Motion Because the Pleadings Are Not Closed

Defendants' Rule 12(c) motion also fails for the independent reason that the pleadings are not closed. A Rule 12(c) motion is "procedurally premature and should [be] denied" if it is filed before any answer. *Doe v. U.S.*, 419 F.3d 1058, 1061 (9th Cir. 2005); *see also Kinzie Advanced Polymers LLC v. Highopes LLC*, 2024 WL 4803515, at *7 (W.D. Wash. Nov. 15, 2024) (denying Rule 12(c) motion without prejudice as the "pleadings are not closed"). Defendants' Rule 12(c) Motion is brought on behalf of the eight Defendants who have not answered. Thus, the pleadings are not closed as to these eight Defendants and their Rule 12(c) motion must be denied.

## IV. <u>CONCLUSION</u>

Valve respectfully requests that the Court deny Defendants' Motion.

DATED: July 9, 2026

I certify that this memorandum contains 8,392 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

<u>*s/ Blake Marks-Dias*</u>
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr.,
*Pro Hac Vice Forthcoming*
Meredith C. Slawe,
*Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*