HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JENNEEN ALSHALALDEH, DYLAN BARTELL, LINCOLN BOCK, JASON BRADLEY, PAUL COPELIN, KENNETH GRUNWALD, BIJAN HOOSHYAR, WILLIAM KELLEY, NICHOLAS KING, JACOB MORGANO, MARISSA RITTER and SEAN ZLATNIK,<br><br>Defendants. | Case No.: 2:26-cv-01680-JHC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE AND FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**<br><br>**NOTE ON MOTION CALENDAR:**<br>July 16, 2026 |

Defendants Jeneen Alshalaldeh, Jason Bradley, Paul Copelin, Kenneth Grunwald, Bijan Hooshyar, William Kelley, Jacob Morgano, and Sean Zlatnik (collectively, "Defendants") for their Reply in support of their Motion to Dismiss the Complaint of Plaintiff Valve Corporation ("Valve"), or in the alternative, for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), state as follows.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

## I. INTRODUCTION

Valve's opposition does not dispute the key fact that controls this motion: that Judge Whitehead has already held, on the identical Original SSA, the identical retroactive forum clause, and the identical notice mechanics, that the retroactive forum selection clause is likely unenforceable against claimants pursuing their individual arbitrations against Valve. *Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717-JNW, 2026 WL 1481630 (W.D. Wash. May 27, 2026). Valve's entire opposition is an attempt to relitigate *Abbruzzese* by pointing to two supposed factual gaps in the Complaint: the absence of dollar figures tied to Defendants' game libraries and the early procedural posture of Defendants' arbitrations. As shown below, these supposed gaps are themselves the product of a multi-year campaign by Valve to escape the very forum it spent over a decade compelling its customers to use. Neither distinction matters, and neither is what it appears. The coercive choice *Abbruzzese* condemned (forfeit your Steam account or forfeit your arbitration rights) is pleaded here in the same words Valve itself sent to Defendants. The one-sidedness of a clause that strips consumers of a forum they already invoked does not depend on how far their arbitrations had progressed before Valve pulled the rug out from under them—particularly where the delay is Valve's own doing.

Valve's remaining arguments fare no better. Its venue argument concedes that the Court, not an arbitrator, must decide which agreement governs. This is exactly what this motion asks the Court to do, and exactly what compels dismissal once the Court finds the forum clause unenforceable. Valve's survivorship argument asks the Court to treat the Current SSA as having superseded the Original SSA for purposes of extinguishing the arbitration clause, while simultaneously insisting the Original SSA was never "terminated" for purposes of triggering the very survivorship clause that preserves it. Valve cannot have it both ways. And its All Writs Act theory depends on an uncertified, hypothetical overlap between Defendants' individual arbitrations and a putative class in *Wolfire* that Valve's own litigation conduct—not Defendants'—has manufactured.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Finally, Valve's opposition simply ignores the point that disposes of every claim against Defendant Alshalaldeh: Valve alleges she purportedly has no Steam account and never agreed to any version of the SSA. Valve cannot seek a declaration, an injunction, or damages for breach of a contract to which its own Complaint alleges she was never a party.

The Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. Valve Cannot Escape *Abbruzzese* by Manufacturing Factual Distinctions the Complaint Does Not Support

Valve does not dispute that Judge Whitehead already found the identical retroactive forum clause procedurally and substantively unconscionable as applied to pending arbitrants, on the identical SSA and notice mechanisms. Valve instead argues that two factual "gaps" make Abbruzzese's reasoning inapplicable. Neither gap exists, and neither would matter if it did.

#### ***1. Valve's Own Complaint Documents a Multi-Year Campaign to Escape the Arbitration Forum It Chose; Judge Whitehead Has Already Seen Through It.***

Judge Whitehead's *Abbruzzese* decision is not a ruling on unfamiliar facts. It is the considered result of full briefing and argument on the same SSA, arbitration clause, retroactive forum-selection clause, and notice scheme. Most importantly, *Abbruzzese* involved the same coercive choice: accept the new SSA or forfeit the game library you already paid for to keep pursuing the arbitration you already invoked. Valve offers two alternative responses to *Abbruzzese*. Both fail.

First, Valve simply asserts that Judge Whitehead's unconscionability holding "was legally erroneous." Opp'n 16. Valve identifies no intervening authority, no change in the law, and no argument Judge Whitehead did not already consider and reject after full briefing and oral argument. A litigant does not show that a decision was legally erroneous merely by repeating, before a different judge of the same court, the arguments the first judge already heard and rejected.

Second, Valve claims that, "regardless" of whether *Abbruzzese* was correctly decided, the facts here are materially distinguishable. *Id*. But the two distinctions Valve offers—the absence of



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

a specific dollar figure for Defendants' game libraries and the early procedural posture of Defendants' arbitrations—are the product of Valve's continuing effort to escape the very forum it spent over a decade compelling its own customers to use.

Valve's Complaint documents the sequence. Valve added the arbitration clause to the SSA in 2012 and enforced it against its customers for roughly twelve years. Compl. ¶¶ 54–56. In 2021, Valve moved this Court to compel individual arbitration in *Wolfire*, and prevailed. *Wolfire Games, LLC v. Valve Corp.*, No. C21-0563-JCC, 2021 WL 4952220, at *3 (W.D. Wash. Oct. 25, 2021). Thousands of consumers, including Defendants, did exactly what Valve and this Court told them to do: they filed individual arbitration demands. Compl. ¶¶ 11–12. On July 8, 2024, one AAA arbitrator decided four arbitrations brought by other customers represented by other counsel that Valve's arbitration agreement was unenforceable for reasons specific to those four customers. Compl. ¶ 14.

Seeing a potential opportunity, Valve began looking for an exit. On September 26, 2024, Valve rewrote its SSA to eliminate the arbitration clause altogether. Compl. ¶¶ 16–17. Then, when the AAA invoiced Valve for its share of case management fees, Valve refused to pay, citing the re-written SSA. Compl. ¶ 22.

Since the AAA will not provide case management services until the requisite fees are paid, Mason LLP as specifically allowed by AAA choose to seek judicial assistance in forcing Valve to honor its contractual and legal obligations: (1) *Smith v. Valve*, brought on behalf of nearly 15,000 claimants, seeking, *inter alia*, to compel Valve to pay its share of case management fees; (2) *Welty v. Valve*, a class action brought on behalf of California claimants seeks various statutory penalties including a default judgment for non-payment of fees; and (3) a motion for sanctions filed in *Wolfire v. Valve* (a class action now captioned as "*In re Valve*"). Each of these three court actions seek to force Valve to honor its obligation to pay for the arbitrations it required pursuant to the terms of Valve's arbitration agreement and/or the California Code of Civil Procedure. None go to the merits of the underlying antitrust claims. Yet Valve claims the Court's jurisdiction over *Wolfire*, *Smith* and *Welty* would be jeopardized if the Defendants—none of whom are named



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

plaintiffs in any of those actions—were allowed to proceed in arbitration on the merits. Opp'n 23. But it is the payment of case management fees that would make that litigation moot, not an award on the merits of Defendants' claims, which Defendants have not put at issue in that litigation. Furthermore, Valve attempts to make Defendants responsible for Valve's contractual breaches, by contending that the procedural delay Valve caused is a material distinction that makes *Abbruzzese*'s unconscionability holding inapplicable. To say the least, that would be inequitable.

***2. The Absence of Dollar Figures Does Not Change the Coercion Valve Itself Pleaded.***

Valve asserts that because it did not allege anything in the Complaint about the value of Defendants' game libraries, the "forced choice" this Court identified in *Abbruzzese* is missing here. Opp'n 2–3. But the facts supporting the forced choice have been pled: Valve alleges that its own notice told Defendants that the new SSA would become effective "unless you delete or discontinue use of your Steam account." Compl. ¶ 62. That is the same binary choice *Abbruzzese* condemned: to preserve their existing arbitration rights, Steam Users would have to lose access to their accounts and everything purchased on them. Whether the Complaint quantifies the dollar value of a given Defendant's library is beside the point; it is the coercive nature of the choice that matters, not the relative size of the account being held hostage. Valve's own cited authorities confirm as much: even Valve's "nonessential recreational activity" cases acknowledge that a consumer forfeits something of value—continued access to a purchased license—by declining new terms. Valve cannot avoid that this Court has already found its ultimatum coercive by asserting the ultimatum cannot be held coercive here until Valve attaches a receipt to its Complaint.

***3. Valve's Cited Authority Is Distinguishable.***

Valve contends that its scheme cannot be found unconscionable as a matter of law. *See* Opp'n at 2 (citing *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) and *Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG (VBKx), 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010)). But both *Bassett* and *Leong* involved consumers who had not yet exercised any



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

contractual right adverse to the drafter at the time the challenged term was presented. Here, by contrast, each of the Moving Defendants had already filed an arbitration demand under the Original SSA before Valve issued its ultimatum. Compl. ¶¶ 11–12. Valve did not merely offer a video game for purchase subject to conditions; it conditioned the retention of already-purchased games on abandoning a pre-existing legal right its customers had already invoked. None of Valve's cases address that scenario. But *Abbruzzese* does, and that case holds that Valve's attempt to cancel already-invoked arbitration rights by retroactively applying its new forum selection clause is untenable.

#### ***4. The Procedural Posture of Defendants' Arbitrations Goes to Damages, Not Enforceability.***

Valve argues that because Defendants' arbitrations have not progressed as far as the *Abbruzzese* defendants' arbitrations, imposing the forum selection clause on Defendants cannot be substantively unconscionable. Opp'n 16–17. This confuses degree with kind. The Court in *Abbruzzese* did not hold that a forum clause becomes unconscionable at any particular point after a demand for arbitration has been made; it held that "losing an accrued right is not the same as shedding a cost one undertook to pay, and a term that does the first to the consumer while doing the second for the drafter is one-sided in operation, whatever its surface symmetry." *Abbruzzese*, 2026 WL 1481630, at *9. A rule that a new, unilaterally-imposed forum selection clause becomes unconscionable only after a claimant reaches a certain point in their litigation under the previous clause would perversely reward companies for delaying and obstructing litigation from advancing towards the resolution of disputes on their merits. Nothing in *Abbruzzese* makes unconscionability a function of litigation age. Each of the Moving Defendants had already filed an arbitration demand—some as early as December 2023—before Valve amended the SSA. Compl. ¶¶ 11–12. That fact defeats Valve's attempt to distinguish *Abbruzzese* on this record. The Court need not decide, and this Motion does not ask, whether a claimant who had not yet initiated arbitration could make the same showing.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

The cases Valve cites do not salvage its argument. *See* Opp'n 17–18 (citing *Saucedo v. Experian Info. Sols.*, No. 1:22-CV-01584-ADA-HBK, 2023 WL 4708015 (E.D. Cal. July 24, 2023); *Dasher v. RBC Bank* (USA), 745 F.3d 1111 (11th Cir. 2014); *SCPS LLC v. Kind Law*, No. CV 25-3255-MWF (SSCx), 2026 WL 96898 (C.D. Cal. 2026); *Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859 (9th Cir. Mar. 3, 2026)). Each of those decisions enforced a new dispute-resolution provision against a claimant who had not yet invoked, and in most instances had never agreed to, any arbitration right at the time of the amendment. None involved a drafter that spent years compelling its customers into arbitration, prevailed on that very point in Court, and then reversed course after the volume and cost of the arbitrations it demanded became inconvenient. That reversal—not the pace of any individual proceeding—is what this Court found unconscionable.

***5. As to the December 2023 Defendants Specifically, the Absence of a Merits Arbitrator Is a Direct Result of Valve's Refusal to Pay Fees.***

The point developed above applies with particular force to the December 2023 Defendants—including Grunwald, Kelley, Morgano, and Zlatnik. Valve's Opposition treats the fact that none of Defendants' arbitrations have been assigned to a merits arbitrator as evidence that the retroactive forum clause could not have been substantively unconscionable when adopted, because "virtually nothing had happened in Defendants' arbitrations." Opp'n 16–17; *see* Compl. ¶ 20. But the Complaint's own allegations, two paragraphs later, explain why "nothing" has happened: for well over a year, Valve has refused to pay the AAA's $20.875 million invoice for case management fees which must be paid before merits arbitrators can be appointed. Valve's refusal to pay the fees is based solely upon the notion that there is no agreement to arbitrate in the Current SSA (Compl. ¶¶ 22–23), the same notion that Judge Whitehead rejected in *Abbruzzese*. The sequence alleged in Valve's Complaint—issuance of the invoice, Valve's refusal to pay, and litigation brought by the various Mason claimants to compel payment—shows Valve purposely stalled Defendants' claims in a preliminary stage of arbitration, which Valve now argues justifies upending the arbitrations altogether. Valve cannot invoke the absence of a merits arbitrator as a



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

reason to avoid arbitrating when it was Valve who caused that absence in the first place. Compl. ¶¶ 20, 22, 93.

As for the April 2024 Defendants—Alshalaldeh, Bradley, Copelin, and Hooshyar—they are in a different posture. Their claims were referred to a Process Arbitrator who stayed those cases pending a Court's determination of which agreement governs. Compl. ¶ 23. That stay was neither requested by nor attributable to Defendants; it was requested by Valve so that a Court (rather than an arbitrator) could resolve the question of whether the Original SSA still requires Valve to arbitrate. Thus, once again, the procedural delay was of Valve's own making—an undisputed fact that reinforces rather than undercuts Defendants' position.

***6. Valve's Venue Arguments Confirm, Rather Than Refute, That Dismissal Is Warranted.***

Valve argues at length that *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), requires the Courts, not an arbitrator, to decide which agreement governs. Opp'n 9–10. That is precisely the question this motion asks the Court to resolve, but *Coinbase* does not tell the Court how to resolve it. Once the Court determines, consistent with *Abbruzzese*, that the Current SSA's retroactive forum clause is unenforceable against pending arbitrants, the analysis set out below in Section II.C establishes that the Original SSA's arbitration clause governs. *Coinbase* only confirms the Court's authority to reach that conclusion; it does not undermine it.

Valve's argument that Rule 12(b)(3) is the "wrong mechanism" to enforce a forum-selection clause, citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013), does not change the outcome either. *See* Opp'n 10. *Atlantic Marine* held only that a forum-selection clause should be enforced through a motion under 28 U.S.C. § 1404(a) or the doctrine of forum non conveniens rather than Rule 12(b)(3)—not that a court lacks authority to decline to enforce an unenforceable forum clause at the pleading stage. Whatever procedural label attaches to Defendants' venue argument, the substantive analysis is the same one Defendants advance under Rule 12(b)(6): the retroactive forum selection clause on which Valve's Complaint depends is unenforceable, and the Complaint accordingly fails to state a claim



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

regardless of the vehicle used to reach that conclusion. Defendants accordingly request that the Court treat Sections V.A and V.B of the opening motion as additional grounds for dismissal under Rule 12(b)(6), which resolves Valve's procedural objection without requiring the Court to reach Rule 12(c) at all.

**B. The Survivorship Clause Controls Because Valve's Own Pleading Concedes the Original SSA Was Superseded.**

In addition to unconscionability, Defendants contend that their right to arbitrate is preserved by the survivorship clause in Section 9.D of the Original SSA, which explicitly preserves the arbitration obligation if the Original SSA is terminated for any reason. Valve insists that the survivorship clause was not triggered because the Original SSA was merely "amended," not "terminated." Opp'n 21–22. That semantic argument is foreclosed by Valve's own Complaint and its own exhibit. The Complaint alleges, and the new SSA states, that the new SSA "constitutes and contains the entire agreement between the parties . . . and supersedes any prior oral or written agreements," and that, as to existing subscribers, it "replaces and supersedes" the prior agreement. Compl. ¶¶ 6, 48; Ex. 1 §§ 10–11. Indeed, Valve relies upon that same "supersession" language elsewhere in its opposition to argue that the Original SSA no longer exists, because it was supposedly supplanted by the new SSA. Opp'n 21. Valve cannot have it both ways. A contract that has been "replace[d] and supersede[d]" has been terminated in every meaningful sense of that term—which is precisely why Black's Law Dictionary defines "supersede" as "to annul, make void, or repeal by taking the place of." Valve does not offer, and cannot offer, any alternative definition that fits within its contorted explanation of why the arbitration survivorship clause in the original SSA was not triggered by the new SSA's purported supersession of the old SSA.

Valve's citation to *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), does not help its position. *Dasher* applied North Carolina law to enforce an arbitration agreement between a bank and its consumer-customers that contained no survivorship provision preserving a duty to arbitrate through supersession. Here, by contrast, the Original SSA expressly anticipated exactly this scenario: Section 9.D was drafted to ensure that Section 11's arbitration obligation would



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

survive "*any* expiration or termination" of the Original SSA (emphasis added). In sum, ignoring (or mischaracterizing) Valve's stated intention to "supersede" the Original SSA does not diminish the preservation of arbitration mandated by Section 9.D.

**C. Good Faith and Equitable Estoppel Independently Bar Valve's Claims.**

Valve's assertion that its amendment was "mutual" rather than "unilateral" (Opp'n 18–19) is simply the same clickwrap-and-forfeiture mechanism addressed in Section II.A.2 of its Opposition, relabeled. Assent coerced by threatening the loss of an already-purchased benefit is not the sort of freely negotiated, bilateral modification that Valve's authority, *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025), contemplates when it distinguishes mutual modification from unilateral amendment. And even accepting Valve's "mutual" characterization, the implied covenant of good faith and fair dealing—which "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance," *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991)—still bars a drafter from using its retained modification power capriciously. The timing here removes any doubt: Valve attempted to avoid arbitration only after tens of thousands of arbitration demands made arbitration more expensive than Valve anticipated. *See* Compl. ¶¶ 3, 16, 22. A contractual power exercised at that precise moment, for that precise reason, is not a good-faith response to a changed circumstances. It is the opportunistic use of discretion the implied covenant forbids.

Valve's equitable estoppel argument fares no better. Valve contends it took no "inconsistent" position because the consumers it previously compelled into arbitration in *Wolfire* are not the Defendants here. Opp'n 20. But equitable estoppel looks to Valve's conduct with respect to the arbitration framework it designed and imposed on its entire consumer base, not to whether the specific individuals asserting estoppel are the same individuals Valve previously compelled into arbitration. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes"). Valve wrote a single, uniform arbitration clause into the SSA that governed every Steam user, litigated to enforce that

clause in *Wolfire*, and secured an Order requiring that all disputes with its customers be arbitrated. Defendants relied upon that same clause and that same Order when they filed their own arbitration demands. Valve cannot now disclaim responsibility for the arbitration regime it built and enforced simply because the particular consumers who tested that regime in *Wolfire* happen to differ from those who invoked it in arbitration. As the *Abbruzzese* court observed of this same conduct, the wave of arbitrations faced by Valve are "Valve's own design at work," leaving Valve "hoist by its own contractual petard." *Abbruzzese*, Dkt. No. 169 at 29 (quoting *Valve Corp. v. Bucher Law PLLC*, 571 P.3d 312, 321 n.6 (Wash. Ct. App. 2025)).

**D. Valve's All Writs Act Claim Depends Upon a Non-Existent Class.**

Valve's All Writs Act Claim fails because an arbitration award binds only the parties to the arbitration; it has no preclusive effect on non-parties. *See Martin v. Wilks*, 490 U.S. 755, 761–62 (1989) (a judgment generally does not bind non-parties). And a putative, uncertified class action does not bind, or get bound by, anyone but the named plaintiffs, because unnamed putative class members are not parties to the litigation unless and until a class is certified. *See Smith v. Bayer Corp.*, 564 U.S. 299, 312–13 (2011) (putative class members are not bound by, and do not bind, a ruling in a separate action to which they were never parties). *Wolfire*, *Smith*, and *Welty* are all pending, uncertified class actions; none has produced a judgment, settlement, or certified class binding Defendants or bound by them. Any award Defendants obtain in their individual arbitrations would bind only Valve and the individual Defendant who obtained it—it could not adjudicate, bind, or otherwise affect the rights of the absent putative class members in *Wolfire*, *Smith*, or *Welty*, because Defendants' arbitrations are not, and could not be, litigated on behalf of that class. For that reason, Defendants' individual arbitrations cannot "threaten" this Court's jurisdiction over separate, uncertified class proceedings whose outcome those arbitrations are legally incapable of affecting.

All of the cases in which courts have enjoined arbitration under the All Writs Act involved a confirmed arbitration award or judgment whose preclusive effect a second proceeding directly threatened, or a class action settlement to which the arbitration claimant was already a bound party.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

*See, e.g.*, *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011) (claimant bound by a class settlement). Valve identifies no comparable judgment, settlement, or certified class here, because none exists. The *Wolfire*' sanctions motion, as well as *Smith* and *Welty*, seek only to compel Valve to pay outstanding AAA case management fees; none seeks to adjudicate, and none could produce a ruling on, the merits of the antitrust claims Defendants are pursuing in arbitration. Compl. ¶¶ 129–30, 154–56. A fee-payment ruling in those proceedings and a merits ruling in Defendants' arbitrations address entirely different questions and cannot be "inconsistent" in any sense the Act recognizes.

Valve, however, asserts that Defendants' arbitrations threaten the Court's jurisdiction over *Wolfire* because *Wolfire*'s putative class definition "encompasses" Defendants' claims. Opp'n 23–24. A putative, uncertified class does not "encompass" anyone; it is, by definition, only a proposal that a class be certified. No class has been certified in *Wolfire*, *Smith*, or *Welty* that includes these Defendants, and Valve's Complaint does not allege otherwise. The single case Valve cites, *PMI Am., Inc. v. M.B. Int'l*, 2012 WL 13018298 (N.D. Ga. Nov. 6, 2012), involved a concrete judicial determination that the specific person at issue was not bound by an arbitration agreement, which was in danger of being undermined by an arbitration brought against that same person under that same agreement. Valve identifies nothing comparable in this case. Instead, Valve relies upon the litigation that Mason LLP was forced to bring on behalf of certain claimants against Valve after Valve refused to pay the AAA fees it owed. *See supra* Section II.A.1; Compl. ¶¶ 129–30, 154–56. In each proceeding, Valve is the defendant resisting an order compelling it to pay case management fees so arbitrators can be appointed. The Act authorizes writs "in aid of" existing jurisdiction, not writs that ratify contractual breaches or that independently enforce unenforceable contract terms. *Clinton v. Goldsmith*, 526 U.S. 529, 534-35 (1999).

### E. Valve Does Not—and Cannot—Explain Its Contractual Theory Against Defendant Alshalaldeh.

Valve's opposition asserts, in a single sentence, that Defendant Alshalaldeh's arbitration "should likewise be enjoined" because she "never entered into any arbitration agreement with



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Valve." Opp'n 1. That sentence does not identify any contractual basis for the declaratory, injunctive, or breach-of-contract relief Valve seeks against her. Counts I through III each depend on the existence and enforceability of an SSA between Valve and the defendant against whom relief is sought. Compl. ¶¶ 134, 138, 145. Valve's Complaint, however, alleges that Defendant Alshalaldeh purportedly has no Steam account or agreement with Valve. *Id.* ¶ 19. Valve's opposition does not cite a single case permitting a party to enforce a contract's forum selection clause against a non-signatory. If Valve wishes to contest the existence of an arbitration agreement between itself and Alshalaldeh, that factual issue is properly raised before the arbitrator.

## III. CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' opening memorandum, Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss Valve Corporation's Complaint against the Moving Defendants in its entirety.

DATED: July 16, 2026

I certify that this memorandum contains 4,198 words, in compliance with the Local Civil Rules.

Respectfully submitted,

*/s/ Gary E. Mason*

Gary E. Mason (*pro hac vice*)
Danielle L. Perry (*pro hac vice*)
Theodore B. Bell (*pro hac vice*)
Jacob D. Eisenberg (*pro hac vice*)
**MASON & PERRY LLP**
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
tbell@masonllp.com
jeisenberg@masonllp.com

Kent M. Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Suite 401
Minneapolis, MN 55415

Telephone: (929) 220-2759
kent.williams@sirillp.com

Mason A. Barney (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (772) 783-8463
Fax: (646) 417-5967
mbarney@sirillp.com

*Counsel for Defendants*

*/s/ Michael C. Subit*

Michael C. Subit, WSBA No. 29189
**FRANK FREED SUBIT & THOMAS LLP**
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Telephone: (206) 682-6711
Facsimile: (206) 682-0401
msubit@frankfreed.com

*Local Counsel for Defendants*