HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

Plaintiff,

v.

JENNEEN ALSHALALDEH, DYLAN BARTELL, LINCOLN BOCK, JASON BRADLEY, PAUL COPELIN, KENNETH GRUNWALD, BIJAN HOOSHYAR, WILLIAM KELLEY, NICHOLAS KING, JACOB MORGANO, MARISSA RITTER, and SEAN ZLATNIK,

Defendants.

No. 2:26-cv-01680-JHC

**DEFENDANTS' OPPOSITION TO PLAINTIFF VALVE CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR: August 6, 2026**

**ORAL ARGUMENT REQUESTED**



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

## TABLE OF CONTENTS

I. INTRODUCTION .... 1
II. STATEMENT OF FACTS .... 2
A. Valve Wrote, Promoted, and Twice Enforced the Arbitration Clause .... 2
B. Defendants Invoked Arbitration in Three Distinct Postures .... 3
C. Valve Refused to Pay, and the Arbitrations Stopped .... 4
D. Valve Removed Arbitration Clause After the Mass Arbitrations Were Filed .... 4
E. Claimants' Counsel Offered to Pay for a Small Number of Arbitrations, So Valve Ran to This Court Seeking Relief From Its Own Agreement .... 6
F. *Abbruzzese* .... 6
III. LEGAL STANDARD .... 7
IV. ARGUMENT .... 7
A. Valve Is Not Likely to Succeed Because the 2024 SSA's Retroactive Forum Provision Is Unconscionable As Applied to Defendants .... 7
1. The provision is procedurally unconscionable. .... 8
2. The provision is substantively unconscionable. .... 10
3. Valve's proffered distinction from Abbruzzese fails. .... 11
B. The Five "Continued-Use" Defendants Did Not Assent to the 2024 SSA .... 12
C. The Merger Clause Does Not Extinguish an Invoked Arbitration Right .... 15
D. Valve Cannot Show Irreparable Harm .... 17
E. The Balance of Equities Favors Defendants .... 19
F. The Public Interest Favors Defendants .... 19
G. Formation Is Genuinely Disputed as to Alshalaldeh and Bartell, and Cannot Be Resolved on This Record .... 20
H. Any Injunction Should Be Conditioned on a Substantial Bond .... 21
V. CONCLUSION .... 21



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Adams v. Postmates, Inc.*,
No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020). .......... 18

*Adkins v. Facebook, Inc.*,
No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019).......... 10

*Adler v. Fred Lind Manor*,
103 P.3d 773 (2004). .......... 8

*Aerojet-Gen. Corp. v. Am. Arb. Ass'n*,
478 F.2d 248 (9th Cir. 1973). .......... 18

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974). .......... 11

*Bassett v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015) .......... 10

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022). .......... 14

*Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*,
671 F.3d 635 (7th Cir. 2011). .......... 18

*Burnett v. Pagliacci Pizza, Inc.*,
470 P.3d 486 (Wash. 2020). .......... 7

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) (unpublished). .......... 12

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024). .......... 7



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

*DeAsis v. Young Men's Christian Ass'n of Yakima*,
183 Wash. App. 1018 (2014) (unpublished). ........................................................... 10

*G.G. v. Valve Corp.*,
No. 2:16-cv-01941-JCC, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017)................................ 3

*G.G. v. Valve Corp.*,
799 F. App'x 557 (9th Cir. Apr. 3, 2020)........................................................................ 3

*Goggins v. Amazon.com Inc.*,
No. 2:24-cv-00257, 2025 WL 2782872 (W.D. Wash. Sept. 30, 2025)............................. 14, 15

*Grant v. T-Mobile USA, Inc.*,
No. 2:23-cv-01946-MJP, 2024 WL 3510937 (W.D. Wash. July 23, 2024)............................ 13

*Huffman v. Hilltop Cos.*,
747 F.3d 391 (6th Cir. 2014). ....................................................................................... 17

*In re Sussex*,
781 F.3d 1065 (9th Cir. 2015). ..................................................................................... 19

*In re Valve Antitrust Litig.* (*Wolfire Games, LLC v. Valve Corp.*),
No. 2:21-cv-00563, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). ....................... 3, 4, 11, 19

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403, 2026 WL 594859 (9th Cir. Mar. 3, 2026). ....................................................... 14

*Jeffery v. Weintraub*,
648 P.2d 914 (Wash. Ct. App. 1982).......................................................................... 7, 11

*Leong v. Square Enix of Am. Holdings, Inc.*,
No. CV 09-4484 PSG (VBKx), 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010)....................... 10

*Litton Fin. Printing Div. v. NLRB*,
501 U.S. 190 (1991). ..................................................................................................... 17

*McGill v. Citibank, N.A.*,
2 Cal. 5th 945 (2017)....................................................................................................... 5



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

*Morgan Keegan & Co. v. McPoland*,
829 F. Supp. 2d 1031 (W.D. Wash. 2011). .................... 18

*Morgan Stanley & Co. v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016). .................... 18

*Nolde Bros., Inc. v. Local No. 358*,
430 U.S. 243 (1977). .................... 17

*Oppenheimer & Co. Inc. v. Mitchell*,
No. C23-67 MJP, 2023 WL 2428404 (W.D. Wash. Mar. 9, 2023). .................... 18

*Peters v. Amazon Services LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, No. 14-35294 (9th Cir. Oct. 13, 2016). .................... 15

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025). .................... 14

*Postmates Inc. v. 10,356 Individuals*,
No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020). .................... 18

*Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*,
415 U.S. 1 (1974). .................... 18

*Res. Grp. Int'l Ltd. v. Chishti*,
91 F.4th 107 (2d Cir. 2024). .................... 18

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023). .................... 14

*Second City Music, Inc. v. City of Chicago*,
333 F.3d 846 (7th Cir. 2003). .................... 18

*Shivkov v. Artex Risk Sols.*,
974 F.3d 1051 (9th Cir. 2020). .................... 17

*Tadych v. Noble Ridge Constr., Inc.*,
519 P.3d 199 (Wash. 2022). .................... 10



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1067 (S.D. Cal. 1999). .................................................................... 15, 16
*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, No. 18-17022 (9th Cir. May 22, 2020)............. 15
*Dlugolecki v. PeopleConnect, Inc.*,
No. CV 20-3657-GW-GJSx, WL 13587803 (C.D. Cal. Nov. 9, 2020).................................... 14
*Valve Corp. v. Abbruzzese*,
No. 2:24-cv-1717-JNW, 2026 WL 1481630 (W.D. Wash. May 27, 2026). ...................... passim
*Valve Corp. v. Bucher Law PLLC*,
566 P.3d 132 (Wash. Ct. App. 2025)............................................................................ 19, 20
*Valve Corp. v. Jason Irias*,
No. 2:26-cv-00698-JNW (W.D. Wash. July 30, 2026). ........................................................ 21
*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008). ............................................................................................................. 7, 20
*Zuver v. Airtouch Commc'ns, Inc.*,
103 P.3d 753 (Wash. 2004). .................................................................................................. 7, 8

**STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1–16. ........................................................................ 19
Federal Arbitration Act, 9 U.S.C. § 4. ................................................................................ 20
Federal Arbitration Act, 9 U.S.C. § 10(a)(4). ....................................................................... 18
RCW 62A.2-302(1)................................................................................................................... 7

**RULES**

Fed. R. Civ. P. 65(c). ............................................................................................................ 21



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

## I. INTRODUCTION

Valve wrote the arbitration clause. Valve told its users that arbitration would benefit them. Valve moved to compel arbitration of Steam Users' antitrust claims in this District and won. And when Steam Users did precisely what Valve's contract directed them to do, file individual arbitrations with the American Arbitration Association (the "AAA"), Valve decided that the forum it chose was too expensive at scale. Valve refused to pay its share of arbitration fees for months and then, facing thousands of arbitrations, rewrote its adhesion contract to eliminate arbitration as a forum, which Valve claimed applied retroactively to all disputes, including pre-existing arbitrations. As a result of Valve's recalcitrance, the Defendants' cases have been stuck in limbo for years while claimants' counsel seek judicial relief, which is still pending. Claimants' counsel also offered to advance Valve's share of arbitration fees for a small number of claimants, including the Defendants herein. Unwilling to arbitrate even a single claim, Valve now asks this Court to enjoin the proceedings compelled by its own contract. *See* Pl. Valve Corp.'s Mot. for Prelim. Inj., ECF No. 19 (the "Motion" or "Mot.").

Two months ago, Judge Whitehead denied a virtually identical motion on materially identical facts. *Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717-JNW, 2026 WL 1481630 (W.D. Wash. May 27, 2026). The court held that the 2024 SSA's retroactive forum provision is likely procedurally and substantively unconscionable under Washington law; that Valve cannot show irreparable harm from litigating in a forum of its own making; and that the equities and the public interest favor the arbitration claimants. Valve does not meaningfully engage that reasoning. It asks this Court to reject it (Mot. 13–21), while simultaneously asking Judge Whitehead to certify the same question for interlocutory appeal. Pl. Valve Corp.'s Mot. to Cert. Order Den. Mot. for Prelim. Inj. for Interloc. Appeal, *Abbruzzese*, No. 2:24-cv-1717-JNW (filed June 10, 2026), ECF No. 173. Valve is entitled to seek review. It is not entitled to an intra-district split obtained by re-filing the same motion before a different judge.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Valve's one purportedly distinguishing fact is that Defendants' arbitrations have not reached merits hearings. That distinction fails on Valve's own record. Washington measures unconscionability at the time of contract formation, not the motion's filing. And the reason nothing has happened is because Valve refuses to pay the $20.875 million in case-management fees the AAA invoiced, which triggered the administrative stays Valve now invokes for the notion that two and a half years of procedural wrangling means nothing.

That same record defeats irreparable harm outright. By Valve's own declarant's account, eight of the twelve Defendants' arbitrations are already stayed—four by the Process Arbitrator on February 9, 2026, and four by the AAA on June 24, 2026. Marks-Dias Decl. ¶¶ 17, 24. The remaining four will proceed only if Claimants advance the fees Valve itself refused to pay. *Id.* ¶ 24. In other words, Valve seeks emergency relief against proceedings that have already stopped, nearly twenty months after the amendment it now says compels that relief. A party who waits twenty months before seeking relief does not experience "irreparable harm."

Finally, as to Defendant Alshalaldeh, Valve's own declarant states only that Valve's records disclose no account "based on the information Defendants' counsel has provided." Lynch Decl. ¶ 52. In other words, Valve asks the Court to enjoin a party from arbitrating under an agreement Valve affirmatively contends does not exist. That is not a basis for extraordinary relief.

The motion should be denied.

## II. STATEMENT OF FACTS

### A. Valve Wrote, Promoted, and Twice Enforced the Arbitration Clause

Valve operates Steam, a digital game-distribution platform. To create a Steam account a user must accept Valve's form Steam Subscriber Agreement. Lynch Decl. ¶ 3. In 2012 Valve added a mandatory individual-arbitration clause and a class-action waiver. *Id.* ¶ 5. The version in effect when Defendants filed their demands for arbitration—effective April 25, 2023 (the "2023 SSA")—contained that clause. *Id.* Ex. A.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

The 2023 SSA also contained a survivorship provision. Section 9(D) provided that the obligation to resolve disputes as provided in Section 11 "will survive any expiration or termination of this Agreement." *Id.* Ex. A § 9(D). And Section 8(A) provided that the agreement "may at any time be mutually amended by your explicit consent to changes proposed by Valve." *Id.* Ex. A § 8(A).

Valve has invoked its arbitration clause twice in recent years to ask courts in this District to compel arbitration. In *G.G. v. Valve Corp.*, No. 2:16-cv-01941-JCC, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017), a court in this District granted Valve's motion to compel arbitration of claims by minor children and their parents suing Valve on their behalf; the Ninth Circuit affirmed in part and vacated in part in an unpublished memorandum disposition. 799 F. App'x 557 (9th Cir. Apr. 3, 2020). And, in *Wolfire Games, LLC v. Valve Corp.* (now captioned *In re Valve Antitrust Litigation* and transferred to Judge Whitehead), a court in this District granted Valve's motion to compel to arbitration a putative class action of consumers with antitrust claims arising under the federal Sherman Act, 15 U.S.C. § 2. No. 2:21-cv-00563, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021). The court compelled seven consumer class action plaintiffs to arbitrate individually and held that challenges to the enforceability of the arbitration provision were for the arbitrator to decide. *Id*. at *3. Valve's motion to compel arbitration in *Wolfire* began this tortured saga. Under that same agreement, Valve obligated itself to bear the costs of arbitration for claims of $10,000 or less. Lynch Decl. Ex. A § 11(C). But when faced with thousands of individual arbitrations, Valve decided arbitration would be too expensive. Valve rejected the forum it had demanded and has refused to arbitrate anything ever since.

### B. <u>Defendants Invoked Arbitration in Three Distinct Postures</u>

Beginning in December 2023, Defendants' counsel began filing individual demands for arbitration with AAA, asserting Sherman Act monopoly-maintenance claims. The twelve Defendants fall into three groups, and the distinctions matter to the analysis:



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

1) Group One — the December 2023 Claimants. Between December 5 and December 20, 2023, Defendants' counsel submitted 14,911 demands to the AAA, including for Defendants Grunwald, Kelley, Morgano, and Zlatnik. Mason Decl. ¶ 9.

2) Group Two — the April 2024 Claimants. In April 2024, counsel submitted 5,000 additional demands for arbitration to the AAA, including those of Defendants Alshalaldeh, Bradley, Copelin, and Hooshyar. Mason Decl. ¶ 10; Marks-Dias Decl. ¶ 4.

3) Group Three — the 2026 Claimants. Defendants Bartell, Bock, King, and Ritter notified Valve of their intent to arbitrate in July 2023 (Mason Decl. ¶ 8) but didn't file claims with the AAA until April 15, 2026. *Id.* ¶ 11. Their claims accrued while Valve's arbitration agreement was in force, and each was a member of the putative consumer class in *Wolfire*, but their demands post-date the 2024 SSA. As set out below (Section IV.A.3, *infra*) the procedural "retroactivity" defect in Valve's forum provision reaches them independently of any reliance-based theory.

### C. <u>Valve Refused to Pay, and the Arbitrations Stopped</u>

On March 24, 2025, the AAA invoiced Valve approximately $20.875 million in case-management fees. Marks-Dias Decl. ¶ 14. On April 23, 2025, Valve refused to pay. *Id.* ¶ 15. On May 15, 2025, the AAA administratively stayed the arbitrations of the 14,911 December 2023 Claimants. *Id.* ¶ 16. And, on February 9, 2026, Process Arbitrator David C. Singer stayed the April 2024 Arbitrations—brought by approximately 5,000 claimants, including those of Alshalaldeh, Bradley, Copelin, and Hooshyar—pending a court's resolution of which SSA governs. *Id.* ¶ 17 & Ex. 7.

### D. <u>Valve Removed Arbitration Clause After the Mass Arbitrations Were Filed</u>

Despite Valve's refusal to arbitrate, the AAA did allow a small number of arbitrations to proceed. On July 8, 2024, an arbitrator in one of those cases held the 2023 SSA's arbitration agreement unenforceable in four arbitrations brought by a different firm. *See* Marks-Dias Decl. ¶



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

8. Those rulings rested on grounds inapplicable to Defendants—one on the fact that the claimant's Steam account predated Valve's introduction of the arbitration clause in 2012 and three on California's *McGill* rule, which holds that "contractual provisions waiving the right to seek public injunctive relief in any forum are unenforceable." Mason Decl. ¶¶ 14–15 & Exs. 6–9. Because none of the twelve Defendants asserts a claim for public injunctive relief, the rulings are not relevant to Valve's Motion or Defendants' underlying claims. Mason Decl. ¶¶ 12, 17.

On September 26, 2024—with nearly 20,000 arbitrations pending—Valve's lawyers came up with a new SSA (the "2024 SSA") that deleted the arbitration clause and the class-action waiver and substituted a retroactive forum provision purportedly reaching "any dispute or claim that arose before the existence of this or any prior agreement." Lynch Decl. ¶ 6 & Ex. B § 10. They also added a generically-worded merger clause. *Id.* Ex. B § 11. Valve communicated the new SSA directly to consumers, including those represented in existing arbitrations by the undersigned counsel, without even notifying counsel beforehand. *Abbruzzese*, 2026 WL 1481630, at *8.

While Valve used emails and other methods to notify Steam Users of its revisions to the SSA (Lynch Decl. ¶¶ 7–18), its communications did "not even speak with one voice about how to reject the [New] SSA." *Abbruzzese*, 2026 WL 1481630, at *8. The notices stated that the new terms would take effect November 1, 2024, "unless you delete or discontinue use of your Steam account before then." Lynch Decl. ¶ 9. Section 8(B) of the existing 2023 SSA, however, stated that a dissenting user's "only remedy is to cancel your Account or to cease use of the affected Subscription(s)." *Id.* Ex. A § 8(B). Under both versions of the SSA, "Subscriptions" and "Accounts" are distinct constructs and the SSA contemplates that a Steam User can maintain and access an Account without actively "using" their Subscriptions. *See, e.g.*, *id.* Ex. A § 1(C) ("Your Account, including any information pertaining to it (e.g.: contact information . . . Account history and Subscriptions, etc.,), is strictly personal.") Valve issued no clarification as to which of these actions would suffice to reject the new SSA and preserve users' pre-existing arbitration rights.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Valve's motion implies that its September 27, 2024, offer to claimants' counsel to reimburse claimants' AAA filing fees was linked to Valve's withdrawal of the arbitration clause, and that claimants' counsel accepted this offer. Mot. 7. That is not accurate. Section 11(C) of the 2023 SSA expressly requires Valve to "promptly reimburse [the consumer's] filing fee and [the consumer's] share of any of AAA's arbitration costs, including arbitrator compensation" for claims seeking $10,000 or less. Lynch Decl. Ex. A § 11(C). Defendants' counsel made numerous requests to Valve for that reimbursement under that SSA provision. Mason Decl. ¶ 19. Therefore, although Valve implies that claimants' counsel accepted the reimbursement as part of Valve's withdrawal of the arbitration agreement, this is false: the reimbursement was already required by the terms of the arbitration agreement and was long overdue.

**E. Claimants' Counsel Offered to Pay for a Small Number of Arbitrations, So Valve Ran to This Court Seeking Relief From Its Own Agreement**

In April 2026, Claimants' counsel informed the AAA that they were willing to advance Valve's share of arbitration fees for Defendants' arbitrations and asked to be invoiced so arbitrators could be appointed. In response, Valve commenced this action on May 15, 2026, nearly twenty months after the amendment to the SSA, and immediately notified the AAA. Compl., ECF No. 1; Marks-Dias Decl. ¶ 23. On June 24, 2026, the AAA temporarily stayed the arbitrations of Bartell, King, Ritter, and Bock because of this action, and stated it would appoint merits arbitrators for Grunwald, Kelley, Morgano, and Zlatnik only "upon receipt of advanced payment of the AAA fees." *Id.* ¶ 24 & Ex. 13. Despite the offer by Claimants' counsel to pay fees, the AAA has not issued any invoices, and no merits arbitrator has been appointed in any Defendant's case. *Id.* ¶ 25.

**F. *Abbruzzese***

On May 27, 2026, Judge Whitehead denied Valve's motion to enjoin the arbitrations of several hundred Steam users, holding the 2024 SSA's retroactive forum provision is likely procedurally and substantively unconscionable as applied, and finding no irreparable harm and no equitable or public-interest basis for an injunction. *Abbruzzese*, 2026 WL 1481630, at *5–12.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

## III. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As the movant, Valve must make a "clear showing" on each of these factors: likelihood of success, irreparable harm, the balance of equities, and the public interest. *Id.* at 20, 22.

## IV. ARGUMENT

### A. Valve Is Not Likely to Succeed Because the 2024 SSA's Retroactive Forum Provision Is Unconscionable As Applied to Defendants

Valve devotes much of its brief to assent. Mot. 10–13. But assent is not the question. Even assuming every Defendant's actions manifested "assent" to the 2024 SSA, Washington law treats formation and enforceability as distinct inquiries: a court may find a term unconscionable even though the parties agreed to it. *See Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 493–96 (Wash. 2020) (holding no assent and, in the alternative, that the provision was procedurally and substantively unconscionable); *Abbruzzese*, 2026 WL 1481630, at *7. Unconscionability is assessed as of the time the contract was made. RCW 62A.2-302(1); *see also Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 763 n.7 (Wash. 2004) (citing *Jeffery v. Weintraub*, 648 P.2d 914, 919 (Wash. Ct. App. 1982)).

Valve's threshold invocation of *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), does not advance its Motion. Mot. 3, 10. For purposes of Valve's Motion, Defendants do not dispute that a court, rather than an arbitrator, decides which agreement governs. But *Coinbase* merely allocates the forum for deciding that question; it does not decide the question itself. Nothing in *Coinbase* addresses which of two competing agreements prevails, and nothing in it speaks to unconscionability. *Coinbase* also involved two separate contracts—a user agreement and a distinct set of sweepstakes rules—rather than successive versions of a single agreement. In sum, Valve treats a holding about who decides arbitrability as though it were a holding that Defendants' claims are not arbitrable. Nothing in *Coinbase* supports this notion.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

***1. The provision is procedurally unconscionable.***

Procedural unconscionability turns on whether a party lacks "meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print." *Zuver*, 103 P.3d at 759 (cleaned up). Those "factors should not be applied mechanically without regard to whether in truth a meaningful choice existed." *Id.* at 760 (cleaned up). The *Abbruzzese* court highlights four qualities of Valve's retroactive arbitration clause retraction that, together, deprived each Defendant of any meaningful choice other than assent to the new terms.

*A forced election*. Section 8(B) told users their "only remedy is to cancel your Account or to cease use of the affected Subscription(s)" (Lynch Decl. Ex. A), and the notices said users must "delete or discontinue use of" their accounts. *Id.* ¶¶ 9, 11; *see also Abbruzzese*, 2026 WL 1481630, at *8. Thus, every route to rejecting the 2024 SSA required Defendants to give up access to their purchased game libraries—the only tangible consideration Valve has ever provided—in order to preserve a pre-existing dispute-resolution right they had already invoked. *Abbruzzese*, 2026 WL 1481630, at *8–9.

*Circumventing opposing counsel*. Valve pushed the amendment directly to the same consumers Valve knew were represented in pending arbitrations. *Abbruzzese*, 2026 WL 1481630, at *8–9. Valve responds that it also notified counsel the next day (Mot. 17.), but that admission only proves the point: Valve obtained "assent" from thousands of represented arbitration opponents before even mentioning it to their lawyers.

*An ambiguous rejection mechanism*. Ambiguity between arguably conflicting provisions is resolved against the drafter. *Adler v. Fred Lind Manor*, 103 P.3d 773, 786 (2004); *Abbruzzese*, 2026 WL 1481630, at *8. As Judge Whitehead observed, Section 8(B) told users their only remedy was to cancel their accounts, while Valve's notices told users to either delete their accounts or "discontinue use of" their accounts to avoid losing their pre-existing arbitration rights. *Abbruzzese*,



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

2026 WL 1481630, at *8; Lynch Decl. Ex. A § 8(B). Judge Whitehead construed the uncertainty over how to decline the new terms against Valve, the drafter. *Abbruzzese*, 2026 WL 1481630, at *8.

Valve, however, asserts that Section 8(B) cures the ambiguity because it states that "your only remedy is to cancel your Account **or to cease use of the affected Subscription(s)**." Lynch Decl. Ex. A (emphasis added); Mot. 16 n.4. But this language only creates more ambiguity. Steam "Subscriptions" and Steam "Accounts" are different: a user can maintain an Account without using any Subscriptions but they cannot use any Subscriptions without maintaining an Account. *See* Lynch Decl. Ex. A § 1(C) (defining Account).[1] Section 8(B) thus contradicts itself: while it states that a user's failure to cancel their account constitutes acceptance of the new SSA, the very next sentence directs non-accepting users to indicate their refusal by either canceling their account or ceasing use of their subscriptions. Given that "cease use of the affected Subscription(s)" means to cease using the games the consumer has already bought (*see* Lynch Decl. Ex. A § 1(B) (defining Subscriptions)), Valve's purported cure for ambiguity clears up nothing and only confirms that Defendants have no meaningful choice.

*Adhesion*. It is undisputed that the SSA is a standard-form agreement drafted by a multibillion-dollar company and imposed on millions of consumers with no opportunity to negotiate. *Abbruzzese*, 2026 WL 1481630, at *7. Valve's only answer is that adhesion alone is insufficient to demonstrate unconscionability (Mot. 14), which is true and also beside the point; adhesion is one factor among several, and it is satisfied in this case. Valve now claims that its notices "neither stated nor suggested that Defendants had to discontinue their use of Steam in perpetuity," and that a claimant "would be free to resume playing games on Steam once his arbitration has been finally determined." Mot. 16 n.5. But no SSA, email, or other notice in the

[1] The distinction is an important one. Under Section 1(B) of the SSA, "Subscriptions" are defined as "the rights to access and/or use any Content and Services accessible through Steam," where Content and Services include games, in-game content, and software. *Id.* Section 1(C), however, indicates that a user's "Account" is different from a "Subscription," stating for example: "Your Account, including any information pertaining to it (*e.g.*: contact information . . . Account history and Subscriptions, etc.,), is strictly personal." *Id.* The SSA thus contemplates that a Subscriber can maintain and access an "Account" without actively "using" their "Subscriptions."

record says that. Valve devises that term out of whole cloth only now, years after the fact, in litigation, and its own theory of the case refutes it: if a user who "discontinues use" thereby rejects the 2024 SSA, then, under Valve's "use-manifests-assent" theory, that user's later return to Steam would manifest assent to the very provision the user rejected. Valve cannot have it both ways. In any event, a user who must suspend use of their paid-for gaming library while Valve actively blocks them from arbitrating for years has not been given a meaningful choice.

Valve's "nonessential recreational activity" cases are inapposite. Mot. 15 (citing *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) (applying NY and CA law); *Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG (VBKx), 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) (CA law); *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) (same); *DeAsis v. Young Men's Christian Ass'n of Yakima*, 183 Wash. App. 1018 (2014) (unpublished)). None of *Bassett*, *Leong*, *Adkins*, nor *DeAsis* involves a consumer directed to surrender property already purchased to preserve a legal right already exercised. That is the type of forfeiture *Abbruzzese* identified, and Valve's cases do not even address it.

***2. The provision is substantively unconscionable.***

A term is substantively unconscionable where it is "one-sided or overly harsh," "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused," and the analysis attends to the term's effect on established rights. *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199, 202 (Wash. 2022) (*en banc*). In *Abbruzzese*, Judge Whitehead held the new forum selection provision substantively unconscionable because it would terminate arbitrations claimants had already filed, unwind their invested time and expense, and benefit only Valve, which sheds the cost of the very forum it not only agreed to bear, but demanded be enforced against consumers. 2026 WL 1481630, at *9–10. The fact that the new forum-selection clause applies equally to both Valve and Defendants does not save it; "facial symmetry" does not change the fact that "only Defendants lose something of value." *Id.* at *10. This one-sided effect is the essence of substantive unconscionability.



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Valve asserts that no statutory right is eliminated because *American Pipe* tolling protects Defendants as putative *Wolfire* class members. Mot. 19. Tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) is contingent by nature, and Valve essentially concedes it is worthless, stating in a footnote that "no class could be certified." Mot. 23 n.6. It is disingenuous to contend that Defendants are protected by a putative class action that can never be certified. Nor does *American Pipe* tolling make up for the wasted years spent trying to litigate in the forum Valve demanded. As Judge Whitehead put it, "a party cannot strip a right, compel its adversaries to proceed without it, and then claim credit for handing it back on the condition that they abandon what they have already built." 2026 WL 1481630, at *10.

Valve also argues Defendants suffered no financial prejudice because their counsel proceeded on contingency with litigation funding. Mot. 19 & Marks-Dias Decl. ¶¶ 26–30. The unconscionability inquiry protects the consumer, not counsel. Valve's position would mean no represented consumer could ever establish substantive unconscionability, because counsel had advanced the costs. Counsel's financing arrangements are irrelevant to whether the term Valve drafted is one-sided as to the consumers bound by it.

The Court should likewise disregard Valve's assertions about purportedly deceased, bankrupt, minor, and dually-represented claimants elsewhere in counsel's pool. Marks-Dias Decl. ¶¶ 6–7. Valve does not allege that any of these twelve Defendants falls into any of those categories and draws no legal conclusion from the allegations. They bear on nothing presently before the Court.

***3. Valve's proffered distinction from Abbruzzese fails.***

Valve attempts to distinguish *Abbruzzese* on the ground that some claimants in that case had prevailed or completed merits hearings, whereas here "Defendants' arbitrations have not commenced." Mot. 3, 19, 23. This distinction does not matter, for three reasons.

First, timing. Washington assesses unconscionability as of contract formation. *Weintraub*, 648 P.2d at 919. Valve concedes the point (Mot. 19) but then disregards it. The relevant question



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

is whether the choice Valve imposed in the autumn of 2024 was meaningful, not how quickly the AAA has moved since then. For the eight Defendants in Groups One and Two, arbitration had been invoked and was pending when Valve's new forum selection clause was forced upon them.

Second, causation. The absence of arbitral progress is completely Valve's doing. Valve refused to pay $20.875 million in case-management fees; that refusal produced the administrative stays; those stays are what Valve now characterizes as Defendants' failure to invest. Marks-Dias Decl. ¶¶ 14–17, 24. Defendants have pressed to arbitrate throughout, including by offering to advance Valve's share of the fees. Mason Decl. ¶¶ 26–29. A party may not manufacture delay and then claim its adversary sat idle. Third, as to Group Three: for Bartell, Bock, King, and Ritter—who notified Valve of their intent to arbitrate in July 2023 (Mason Decl. ¶ 9 & Ex. 8) but didn't file claims with the AAA until April 15, 2026 (*id*. ¶ 9 & Ex. 9)—the defect is the provision's retroactivity on its face: it reaches "any dispute or claim that arose before the existence of this or any prior agreement," and thereby purports to strip the forum for claims that accrued while the 2023 SSA—including its Section 9(D) survivorship clause—was the operative agreement. While a drafter may prospectively change the forum for future disputes, reaching backward to claims that accrued under a prior agreement, after mass arbitrations asserting those very claims were filed against it, is what makes this provision unconscionable. *See, e.g.*, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (unpublished) (amendment adding arbitration four months after complaint filed could not reach accrued, pending claims, and breached the implied covenant of good faith and fair dealing); *see also Abbruzzese*, 2026 WL 1481630, at *10.

**B. <u>The Five "Continued-Use" Defendants Did Not Assent to the 2024 SSA</u>**

Valve concedes that five Defendants—Bock, Grunwald, Morgano, Ritter, and Zlatnik—never checked a box or clicked a button. Lynch Decl. ¶¶ 32–35, 41–46. Valve's theory as to them is that they logged in and did not delete their accounts. That theory fails under the language of Valve's own contract.

Section 8(A) of the 2023 SSA provides that the agreement "may at any time be mutually amended by your explicit consent to changes proposed by Valve." Lynch Decl. Ex. A § 8(A). Valve cites Section 8(A) as authority for its notices. Mot. 7. But Valve's own drafting requires "explicit consent" for a mutual amendment, and merely logging in is not explicit consent. Valve cannot invoke Section 8(A) to validate the notices while ignoring the standard of assent imposed by that same provision.

In *Abbruzzese*, Judge Whitehead did not resolve whether continued login manifests assent. 2026 WL 1481630, at *7 ("the Court need not resolve" the "harder question" of the "continued-use Defendants" because "the grounds set out below defeat Valve's claim as to every Defendant, however the continued-use group is treated."). It need not be resolved here either. In addition to the unconscionability of trying to wipe out thousands of pending arbitrations by depriving the claimants of access to their purchased games, because Valve bears the burden of proving assent and its evidence does not satisfy it. Zlatnik logged in twice—November 1 and November 3, 2024—and never again. Lynch Decl. ¶ 46. Morgano logged in three times on a single day, December 22, 2024. *Id.* ¶ 42. Bock logged in ten times over ten months. *Id.* ¶ 33. This sprinkling of log-ins, without more, falls far short of the "explicit consent" Valve must demonstrate to prevail on its Motion.

Valve emphasizes that two of the five logged in more often—Grunwald more than 1,180 times and Ritter 197 times. *Id.* ¶¶ 35, 44; Mot. 13. For purposes of Valve's Motion, Defendants do not dispute those figures, but they do not help Valve. Frequency is not a proxy for assent. A consumer who opens an application they have paid to use is not thereby negotiating, and repetition of an act that carries no expressive content cannot convert silence into the "unambiguous" manifestation of assent that Valve's own authorities require. *See Grant v. T-Mobile USA, Inc.*, No. 2:23-cv-01946-MJP, 2024 WL 3510937, at *5 (W.D. Wash. July 23, 2024) ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.")

(quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022).) Nothing in the SSA or notices advised users that merely logging in to one's Account would constitute acceptance; to the contrary, by offering "ceas[ing] use of the affected Subscriptions" as a remedy, Valve implied that a user could still log in and do all sorts of things without "consenting," so long as they did not play any games. Logging in under such circumstances is hardly a "knowing relinquishment" of a dispute-resolution right the user had already exercised. The disparity in log-ins among these five Defendants—from two logins to more than 1,180—shows that Valve's theory has no limiting principle: in Valve's view a single act has the same impact whether performed once, twice or a thousand times.

Valve's continued-use authorities do not fill the gap. Mot. 12–13. *Pilon*, *Sadlock*, *Dlugolecki*, *West*, *Ireland-Gordy*, and *Goggins* each involved sustained, substantive transactional engagement with a service after clear, unambiguous notice—repeat purchases, ongoing subscriptions, and continued commercial dealing. None involved a claimant with a pending arbitration against the drafter, and none treated mere account access as a waiver of a right that had already been invoked.

In *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289–90 (S.D.N.Y. 2025), the court found assent where the user "continued to subscribe to and use" the service—again, substantive engagement, not a bare log-in. In *Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023), the court noted that "emails plus continued use" could establish assent, *id*. at *11, but the "use" contemplated there involved actual consumption of the service's benefits. Not so, here, where the allegation is only that these five Defendants logged in to their Steam Accounts, but not that they used their Subscriptions. In *Ireland-Gordy v. Tile, Inc.*, No. 25-403, 2026 WL 594859, at *4 (9th Cir. Mar. 3, 2026), the Ninth Circuit held that plaintiffs "unambiguously manifested assent" through their "continued use of the Tile App." But again, the plaintiffs in *Tile* were actively using the app—not simply logging in without engaging in any substantive activity. In *Goggins v. Amazon.com Inc.*, No. 2:24-cv-00257, 2025 WL



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

2782872, at *3, *6, *7 (W.D. Wash. Sept. 30, 2025), the court enforced updated terms where the plaintiff sustained engagement by actively interacting with Amazon's Advantage Program.

### C. The Merger Clause Does Not Extinguish an Invoked Arbitration Right

Valve's fallback is that the 2024 SSA's merger clause extinguished the 2023 SSA and its arbitration agreement, so that even if the new forum provision is unenforceable, Defendants are still left with no right to arbitrate. Mot. 20. The three cases Valve cites do not support that result.

*Trudeau v. Google LLC*, 349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, No. 18-17022 (9th Cir. May 22, 2020) (unpublished), stands for the proposition that a bilaterally-accepted agreement with a genuine opt-out can extend to already-accrued claims. In *Trudeau*, Google moved to compel arbitration based on its amended terms of service and won. The amendments were deemed a novation because Google "required express acceptance," and the court rejected procedural unconscionability because the new terms contained an express, thirty-day opt-out. *Id.* at 878–79. But in the present case, the 2024 SSA had no opt-out; Valve's only alternative to acceptance was abandonment of a purchased library. *Trudeau*'s reasoning is authority against Valve, not for it.

*Peters v. Amazon Services LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, No. 14-35294 (9th Cir. Oct. 13, 2016), is the same inversion. The parties there were sophisticated commercial sellers, and no claimant had commenced arbitration, when Amazon integrated an arbitration clause into its terms of service. When the plaintiff sued Amazon in court, Amazon moved to compel arbitration and won because the Court found that the integrated arbitration clause displaced the agreement's pre-existing forum-selection clause. *Id.* at 1173. *Peters* thus holds only that an integration clause gives effect to a later agreement's arbitration provision. It does not stand for the proposition that an integration clause may be used to extinguish an arbitration right a claimant has already invoked.

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067 (S.D. Cal. 1999), is the only case that superficially supports Valve's proposition, but it is distinguishable. Thiele was a stockbroker who sued his former employer for age discrimination. Over the course of his career



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

he signed a series of employment-related agreements, each containing an arbitration clause; the most recent was an industry registration form he signed in 1995. The court held that the 1995 form superseded the earlier agreements, and that a federal age-discrimination statute made the arbitration clause within that form unenforceable as to his statutory claims. The employer then argued that with the elimination of the 1995 form, the arbitration clauses in the earlier agreements sprang back into effect. The court disagreed, holding that the later clause's unenforceability did not revive the arbitration clauses in the earlier agreements. *Id*. at 1072.

This case differs from *Thiele* in three important ways. First, no party in Thiele had invoked the earlier agreement's arbitration clause or was prosecuting a proceeding under it; the question was whether a dormant contract was resurrected by the Court's refusal to enforce a purportedly superseding contract that violated an employee's statutory rights. Here, eight Defendants had filed demands and were awaiting the appointment of arbitrators when Valve amended the SSA, and the remaining four had already notified Valve of their intent to arbitrate. *Thiele* does not address the question of whether such actions, taken in reliance on a pre-existing contract that the other party then tried to unilaterally eliminate, are restored after the other party's efforts are deemed unconscionable. Second, and more fundamentally, no party in Thiele challenged the supersession itself. The 1995 form in *Thiele* validly replaced the earlier agreements; a single clause within it failed, and it failed by operation of a statute. In contrast, Defendants in this case dispute the validity of the purportedly superseding provision—the retroactive forum clause—and contend that the way Valve obtained "assent" to it was unconscionable. In other words, the new SSA never displaced the old SSA because the new SSA was never valid in the first place; as result, the old SSA remains in effect, and there is nothing to revive.

Third, the prior agreement at issue in *Thiele* did not have a survivorship clause that explicitly preserved the obligation to arbitrate if the prior agreement was terminated for any reason. As a general matter, where an arbitration obligation is invoked as to rights that accrued under an expired agreement, the obligation to arbitrate is presumed to survive. *Litton Fin. Printing Div. v.*



**MASON & PERRY LLP**
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

*NLRB*, 501 U.S. 190, 205–09 (1991); *Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243, 255 (1977); *see Shivkov v. Artex Risk Sols.*, 974 F.3d 1051, 1060-61 (9th Cir. 2020) (adopting the *Litton* framework and presuming post-expiration arbitration absent express negation); *Huffman v. Hilltop Cos.*, 747 F.3d 391 (6th Cir. 2014) (same). Here, Section 9(D) of the 2023 SSA expressly provided that the obligation to arbitrate "will survive any expiration or termination of this Agreement." Lynch Decl. Ex. A § 9(D). That is not a mere presumption to be overcome; it is the parties' express affirmation of arbitration regardless of what succeeded the 2023 SSA, and thereby forecloses Valve's reading of the merger clause.

**D. Valve Cannot Show Irreparable Harm**

Valve's irreparable-harm showing fails on its own record, for three independent reasons.

First, eight of the twelve arbitrations are already stayed. The Process Arbitrator stayed the arbitrations of Alshalaldeh, Bradley, Copelin, and Hooshyar on February 9, 2026. Marks-Dias Decl. ¶ 17. The AAA stayed the arbitrations of Bartell, King, Ritter, and Bock on June 24, 2026. *Id.* ¶ 24. Valve acknowledges both stays. Mot. 8, 17. An injunction cannot prevent harm from proceedings that are not proceeding. As to those eight Defendants, Valve seeks an order with no operative effect and can show no imminent injury at all.

Second, as to the remaining four—Grunwald, Kelley, Morgano, and Zlatnik—the AAA will appoint merits arbitrators only "upon receipt of advanced payment of the AAA fees." *Id.* ¶ 24. Those are the same fees Valve refuses to pay. If those four arbitrations move forward, it can only be because Claimants advances Valve's share or a court determines that Valve's theory about the applicable SSA is wrong and orders Valve to arbitrate. Moreover, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended," are not by themselves irreparable. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Valve's asserted injury—"significant AAA and legal fees" (Mot. 21)—is therefore impermissibly speculative as to the AAA component and, as to the rest, is the ordinary cost of a forum Valve wrote, promoted, and twice compelled. Third, Valve waited. Four Defendants initiated arbitration in December of 2023, and another four

in April of 2024, but Valve did not file suit until May 15, 2026—nearly twenty months after Valve unilaterally amended its SSA in an effort to strip Defendants of their vested arbitration rights. Marks-Dias Decl. ¶¶ 10, 23. A party facing genuinely irreparable injury does not wait for months to seek "emergency" relief. Delay of that magnitude undercuts any claim of urgency.

Valve's *per se* authorities do not apply. *Oppenheimer*, *Morgan Keegan*, *Morgan Stanley*, and *Chishti* (Mot. 20–21) concern parties who never agreed to arbitrate and never invoked arbitration. As *Abbruzzese* put it, that line of cases "speaks to a stranger to the forum—a party that never agreed to arbitrate, or that lost the right. Valve is the opposite." 2026 WL 1481630, at *10. Where, as in this case, the movant demanded the complained-of forum, the harm is self-inflicted, and "self-inflicted wounds are not irreparable injury." *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 849 (7th Cir. 2003).

A court confronted with the mirror image of this motion adopted this same reasoning in *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020), denying a company's request to enjoin thousands of AAA arbitrations because "mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable harm," *id.* at *8 (quoting *Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*, 415 U.S. 1, 24 (1974)), and the claimed harm was "entirely of its own making" given the company's own mandatory arbitration clause. *Id.* (quoting *Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980, at *5–6 (N.D. Cal. Mar. 5, 2020)).

Finally, Valve already has both an adequate remedy and the process through which to obtain it. If Valve believes an arbitrator lacks authority, it may raise that objection and, if an award issues against it, seek vacatur under 9 U.S.C. § 10(a)(4). *See Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) ("Review comes at the beginning or the end, but not in the middle."). The Ninth Circuit has long held that pre-award judicial intervention in a pending arbitration "should be indulged, if at all, only in the most extreme cases." *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (reversing an injunction against a



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

pending AAA arbitration); *accord In re Sussex*, 781 F.3d 1065 (9th Cir. 2015). This is not such a case.

### E. The Balance of Equities Favors Defendants

If the injunction issues, Defendants lose the only forum available to them, while Valve is relieved of costs it contracted to bear. The consolidated *Wolfire* action is not an adequate substitute: no class is certified, Defendants are not named plaintiffs, they would have no control over the litigation, and Valve maintains that no class could ever be certified. Mot. 22 n.6. As in *Abbruzzese*, "the restored class mechanism and ability to present their claims against Valve to a jury is worthless." 2026 WL 1481630, at *10.

Valve's equitable position also depends upon characterizing the delay in these arbitrations as Defendants' doing. It is Valve's. The Group One Defendants have been trying to arbitrate since December 2023. What has stopped them is Valve's refusal to honor its contractual obligations and pay the fees the AAA invoiced, and when Claimants offered to pay the fees, Valve's request for an Order that keeps in effect the stays produced by Valve's refusal. Marks-Dias Decl. ¶¶ 14–17, 24.

### F. The Public Interest Favors Defendants

The public interest disfavors a rule permitting a drafter to compel arbitration when class litigation threatens and to abolish arbitration when mass arbitration threatens. That is the "serial forum-switching" concern *Abbruzzese* identified, 2026 WL 1481630, at *12, and it is not hypothetical: Valve's conduct here is the second move in exactly that sequence. Enforcing dispute-resolution provisions against the party that drafted them is the only way to keep with the intent of the Federal Arbitration Act.

Although Valve seems to suggest that its procedural moves are justified because the cost of arbitrating is so high, the Washington' Court of Appeals has already observed in *Valve Corp. v. Bucher Law PLLC*, 566 P.3d 132 (Wash. Ct. App. 2025), review pending, No. 1044178, that the volume of individual arbitrations against Valve is "a direct result of its own agreement barring



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

class actions and prohibiting collective or representative arbitration," *id.* at 321, adding that "Valve is hoist by its own contractual petard." *Id.* at 321 n.6. The circumstances of this case are the same. The public interest is served by holding a company to the terms it foisted upon consumers—not by letting the company off the hook due to the expense of consumers complying with the terms.

### G. Formation Is Genuinely Disputed as to Alshalaldeh and Bartell, and Cannot Be Resolved on This Record

Valve, as movant, bears the burden of a "clear showing" in its favor on the requisite factors. *Winter*, 555 U.S. at 22. Valve's entire showing as to Defendant Alshalaldeh is that "there is no Steam account for Defendant Alshalaldeh based on the information Defendants' counsel has provided to Valve." Lynch Decl. ¶ 52. That is a qualified negative-search result, not proof. It establishes only that a database query keyed to identifiers of uncertain completeness returned no match. This is insufficient, particularly given Valve's admission that it does not collect users' names. *Id.* ¶ 4. The Bartell showing has the same defect, but in a different form. Valve's declarant states that he "assume[s]" the March 13, 2025 "Second Bartell Account" belongs to Defendant Bartell but "do[es] not have personal knowledge of that fact." *Id.* ¶ 48. But to have any probative value, a witness' testimony must be made on personal knowledge and must set out facts admissible in evidence. The only evidentiary effect of Lynch's contentions about Bartell's purported "second account" is the implicit concession that Valve cannot establish Bartell's acceptance of the new SSA based upon his use of his original 2013 account.

Moreover, with respect to both Alshalaldeh and Bartell, where the making of an arbitration agreement is in issue, the FAA directs that "the court shall proceed summarily to the trial thereof," with a jury available on demand. 9 U.S.C. § 4. That design contemplates a developed record—not affidavit-based findings on compressed emergency briefing—because a formation ruling forecloses one side's forum. Defendants do not concede that Alshalaldeh lacks an agreement with Valve; their position is that Valve's evidence cannot support a finding either way. If nothing else,



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

the Motion should be denied as to Alshalaldeh and Bartell without prejudice to orderly proceedings on Valve's declaratory-judgment claim.

### H. Any Injunction Should Be Conditioned on a Substantial Bond

Should the Court grant any relief, Fed. R Civ. P. 65(c) requires security in an amount sufficient to pay the costs and damages sustained by a party found to have been wrongfully enjoined. Because an injunction would remove Defendants' only available forum and expose their antitrust claims to limitations risk should the putative class never be certified—a risk that Valve asserts is certain (Mot. 22 n.6)—a substantial bond is warranted. Defendants request the opportunity to submit a proposed amount if the Court is inclined to grant relief.

## V. CONCLUSION

Valve seeks an extraordinary remedy against proceedings that are already stayed, nearly twenty months after the amendment it says requires that remedy, and two and half years after the earliest of these arbitrations were initiated, on a record showing that whatever delay has occurred is of Valve's own making, and in contradiction to an opinion by another judge in this District. Only two months ago, in a case brought by similarly-situated consumers alleging the same right to arbitrate their claims against the same company and based upon the same agreements at issue in this case, Judge Whitehead denied the same motion brought by Valve based upon the same theory and making the same arguments.[2] This Court should do the same. For the foregoing reasons,

[2] On July 30, 2026, as counsel for Defendants were preparing to file this opposition, Judge Whitehead acted *sua sponte* to stay Valve's action to enjoin another Steam user from pursuing his antitrust claims against Valve in arbitration. Order, *Valve Corp. v. Jason Irias*, No. 2:26-cv-00698-JNW (W.D. Wash. July 30, 2026), ECF No. 37. Judge Whitehead acted in *Irias* after certifying the order denying Valve's Motion for Preliminary Injunction in *Abbruzzese* for interlocutory appeal. *Abbruzzese*, ECF No. 192.

In his order staying *Irias*, Judge Whitehead wrote:

> In a related matter, *Valve Corp. v. Abbruzzese*, the Court denied Valve's motion for a preliminary injunction, holding that the Updated Steam Subscriber Agreement's retroactive forum-selection clause is likely unconscionable, and so unenforceable, as applied to the defendants there. . . This case stands in the shadow of *Abbruzzese*. . . .—should the Ninth Circuit accept the *Abbruzzese* appeal, the outcome would no doubt affect the nearly identical claims here . . . .

*Irias* Order at 2. Judge Whitehead also struck the defendant's motion to dismiss and Valve's motion for preliminary injunction, with leave to renew. *Id.*



MASON & PERRY LLP
5335 Wisconsin Ave. NW, Ste. 640
Washington, DC 20015
Tel: (202) 429-2290

Defendants respectfully request that the Court deny Valve's motion for a preliminary injunction in its entirety.

DATED: July 30, 2026

I certify that this memorandum contains 7,650 words, in compliance with the Local Civil Rules.

Respectfully submitted,

**MASON & PERRY LLP**

*/s/ Gary E. Mason*

Gary E. Mason (*pro hac vice*)
Danielle L. Perry (*pro hac vice*)
Jacob D. Eisenberg (*pro hac vice*)
5335 Wisconsin Avenue NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
gmason@masonllp.com
dperry@masonllp.com
jeisenberg@masonllp.com

Kent M. Williams (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 S. 4th Street, Suite 401
Minneapolis, MN 55415
Telephone: (929) 220-2759
kent.williams@sirillp.com

Mason A. Barney (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (772) 783-8463
Fax: (646) 417-5967
mbarney@sirillp.com

*Counsel for Defendants*

*/s/ Michael C. Subit*

Michael C. Subit, WSBA No. 29189
**FRANK FREED SUBIT & THOMAS LLP**
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Telephone: (206) 682-6711

Facsimile: (206) 682-0401
msubit@frankfreed.com

*Local Counsel for Defendants*