THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

Plaintiff,

v.

JENNEEN ALSHALALDEH, DYLAN BARTELL, LINCOLN BOCK, JASON BRADLEY, PAUL COPELIN, KENNETH GRUNWALD, BIJAN HOOSHYAR, WILLIAM KELLEY, NICHOLAS KING, JACOB MORGANO, MARISSA RITTER, and SEAN ZLATNIK,

Defendants.

No. 2:26-cv-01680-JHC

**PLAINTIFF VALVE CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**ORAL ARGUMENT REQUESTED**



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

I. INTRODUCTION ..........1

II. THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED ..........2

A. Valve Has Demonstrated A Likelihood of Success On The Merits Because The Parties Have No Agreement To Arbitrate..........2

1. The Steam User Defendants Agreed to the Controlling SSA ..........2

2. The Forum Provision in the Controlling SSA Is Enforceable ..........4

(a) The Controlling SSA's Forum Provision Is Not Procedurally Unconscionable..........4

(b) The Controlling SSA's Forum Provision Is Not Substantively Unconscionable..........7

3. The Parties Have No Agreement To Arbitrate Even If the Forum Provision in the Controlling SSA Is Deemed Unconscionable and Thus Unenforceable..........9

4. Defendants Do Not Refute Valve's Showing that Defendant Alshalaldeh Has No Agreement to Arbitrate with Valve ..........10

B. Valve Faces Irreparable Harm If Forced To Arbitrate..........10

C. The Relative Interests of the Parties Favor An Injunction..........12

D. The Public Interest Favors An Injunction..........12

E. The Court Should Not Require A Bond..........13

III. CONCLUSION..........13



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adkins v. Facebook, Inc.*,
Nos. C 18-05982 WHA, No. C19-00117 WHA,
2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ....................5

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) ....................8, 9

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011) ....................10

*Bassett v. Electronic Arts Inc.*,
No. 13-CV-04208 (MKB)(SMG),
2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015) ....................4

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) ....................8

*DeAsis v. Young Men's Christian Ass'n of Yakima*,
183 Wash. App. 1018 (2014) ....................5

*Feldenkrais Guild of North America v. Wildman*,
No. 18-cv-2340-YGR,
2018 WL 2331905 (N.D. Cal. May 23, 2018) ....................3

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................3

*Goggins v. Amazon.com Inc.*,
No. 2:24-cv-00257,
2025 WL 2782872 (W.D. Wash. Sep. 30, 2025) ....................3

*Haider v. Lyft, Inc.*,
No. 20-cv-2997 (AJN),
2021 WL 3475621 (S.D.N.Y. Aug. 6, 2021) ....................6

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403,
2026 WL 594859 (9th Cir. Mar. 3, 2026) ....................8



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Kater v. Churchill Downs Inc.*,
423 F. Supp. 3d 1055 (W.D. Wash. 2019)....12

*Leong v. Square Enix of America Holdings, Inc.*,
No. CV 09-4484 PSG (VBKx),
2010 WL 1641364 (C.D. Cal. Apr. 20, 2010),
*aff'd*, 462 F. App'x 688 (9th Cir. 2011)....5

*Missing Link, Inc. v. eBay, Inc.*,
No. C-07-04487 RMW,
2008 WL 3496865 (N.D. Cal. Aug. 12, 2008)....5

*Peters v. Amazon Services LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013),
*aff'd*, 669 F. App'x 487 (9th Cir. Oct. 13, 2016)....9

*Pham v. Bondi*,
No. 2:25-cv-01835-JHC,
2025 WL 3122884 (W.D. Wash. Nov. 7, 2025)....5

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025)....8

*Postmates Inc. v. 10,356 Individuals*,
No. CV20-2783 PSG (JEMx),
2020 WL 1908302 (C.D. Cal. Apr. 15, 2020)....11

*SCPS LLC v. Kind Law*,
No. CV 25-3255-MWF (SSCx),
2026 WL 96898 (C.D. Cal. Jan. 8, 2026)....8

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1067 (S.D. Cal. 1999)....9

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020)....9

*Trudeau v. Google LLC*,
349 F. Supp. 3d 869 (N.D. Cal. 2018),
*aff'd*, 816 F. App'x 68 (9th Cir. 2020)....9

*Valve Corporation v. Abbruzzese*,
No. 2:24-cv-1717-JNW,
2026 WL 1481630 (W.D. Wash. May 27, 2026),
*motion to certify appeal granted*, 2026 WL 2198552 (W.D. Wash. July 30, 2026)....1, 3, 7



**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## I. INTRODUCTION

Valve's Motion for Preliminary Injunction ("Motion")[1] establishes every predicate for preliminary injunctive relief:

*First*, Valve is likely to succeed on the merits:

- Valve showed, based on its business records and information provided by Defendants' Counsel, Defendant Alshalaldeh never had an arbitration agreement. She proffers no contrary evidence.
- The Controlling SSA, which provides for resolution of disputes in court rather than arbitration, is valid and enforceable as to the Steam User Defendants.

Defendants rely heavily on the court's order in *Valve Corporation v. Abbruzzese*, 2026 WL 1481630 (W.D. Wash. May 27, 2026), declining to preliminarily enjoin other arbitrations. But on July 30, 2026, that court granted Valve permission to seek interlocutory appeal of that order because "fair-minded jurists might reach contradictory conclusions." *Abbruzzese*, Dkt. 192 at 4.

In any event, *Abbruzzese* is inapposite. The court reasoned that it would be unfair to enjoin arbitrations where claimants were on "the verge of relief" by the time of its decision.[2] Here, however, Defendants concede their arbitrations have not even commenced. Defendants suggest their arbitrations have not progressed because Valve declined to pay a March 24, 2025, invoice for $20.875 million in arbitration fees, but that's not so: four of the Steam User Defendants did not commence their arbitrations until more than a year after that invoice was issued. (Mot. 8-9.) The other Steam User Defendants accepted the Controlling SSA before that invoice was issued. (Lynch Decl. ¶¶ 26-51; Ex. 4.) Because unconscionability is determined at the time of contract formation, that invoice—and Valve's response to it—is irrelevant.

*Second*, Valve will suffer irreparable harm if Defendants' arbitrations continue.

---

[1] Capitalized terms have the meanings ascribed to them in the Motion. Unless noted, internal citations and quotations are omitted and all emphasis is added.

[2] Valve respectfully disagrees with the *Abbruzzese* court's conclusion.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants argue that some arbitrations are stayed, but those stays are only temporary. Defendants note that four arbitrations will proceed only if Defendants elect to advance fees, but they already told the AAA that they will advance them. There is nothing "speculative" about the harm Valve faces.

*Third*, the balance of equities supports an injunction. Defendants conjure a parade of horribles, including the loss of "the only forum available to them." (Opp'n 19.) But Defendants can pursue their claims in court. Defendants also contend that Valve updated the SSA because it was "[u]nwilling to arbitrate" in a forum that it concluded was "too expensive at scale." (Opp'n 1.) Nonsense. Valve had been defending itself in mass arbitration for months when, in July 2024, counsel in one mass arbitration campaign, Bucher Law PLLC, obtained rulings from an arbitrator declaring the Superseded SSA's arbitration agreement unenforceable. Bucher Law then filed a putative nationwide class action **on behalf of all Steam users, including the Steam User Defendants**, premised on those rulings. In view of those developments, Valve exercised its amendment rights under the SSA and updated it to remove the arbitration agreement and class action waiver. The alternative—proceeding in court and in arbitration on the *same* antitrust claims—would be manifestly inefficient and a waste of the parties', judicial, and arbitral resources. Valve acted in good faith to clear up confusion among its users and restore order to a dispute resolution process Bucher Law had thrown into chaos.

*Fourth*, the public interest favors an injunction. Defendants have no answer to Valve's authority holding that the public interest is not served by compelling parties to arbitrate in the absence of an arbitration agreement.

## II. <u>THE MOTION FOR PRELIMINARY INJUNCTION SHOULD BE GRANTED</u>

### A. Valve Has Demonstrated A Likelihood of Success On The Merits Because The Parties Have No Agreement To Arbitrate

#### 1. The Steam User Defendants Agreed to the Controlling SSA

Defendants concede that the five Steam User Defendants who affirmatively accepted the Controlling SSA before November 1, 2024, are bound. (*See* Mot. 12.) But they argue that the five



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Steam User Defendants who accepted the Controlling SSA through continued use are not bound. (Opp'n 12-15.) Not so: it is well settled that users of services may consent to updated terms through their ongoing use.

Defendants Zlatnik, Morgano, and Bock argue that they did not log in frequently enough, and accordingly that their "sprinkling of log-ins" is insufficient to manifest "explicit consent." (Opp'n 13.) For their part, Defendants Grunwald and Ritter—who logged in more than 1,180 times and 197 times, respectively—argue that "[f]requency is not a proxy for assent." (*Id.*) Both are incorrect: users manifest assent if they continue to use a service after receiving notice of updated terms, regardless of frequency. (Mot. 12); *see also Goggins v. Amazon.com Inc.*, 2025 WL 2782872, at *6 (W.D. Wash. Sep. 30, 2025) (enforcing updated terms where after plaintiff received notice of modification he accessed the website and did not "discontinue [his] membership"). The court in *Abbruzzese* suggested—albeit without expressly deciding—that continued use was sufficient to manifest assent. *See Abbruzzese*, 2026 WL 1481630, at *7-10. Defendants do not meaningfully distinguish Valve's authorities so holding. (Mot. 12-13; Opp'n 14-15.) Those cases confirm that continued use following clear notice of updated contractual terms manifests assent.

Defendant Bartell signed up for a new Steam account in March 2025 and assented to the Controlling SSA through his sign-up and purchases thereafter. (Lynch Decl. ¶¶ 47-51.) He does not refute Valve's evidence. He contends that Valve improperly "assume[s]" that account belongs to him (Opp'n 20), but Valve did not simply assume that: it based its conclusion on information provided by Bartell's own counsel that he does not dispute. He could have offered a sworn declaration that he did *not* sign up for a new account in March 2025 or that he did *not* make subsequent purchases; he conspicuously declined to do so. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 933 (N.D. Cal. 2024) (compelling arbitration where defendant "supplied evidence" of notice and plaintiff did not submit "any counter evidence"); *see also Feldenkrais Guild of N. Am. v. Wildman*, 2018 WL 2331905, at *3 (N.D. Cal. May 23, 2018)



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

("To establish a likelihood of success, plaintiff need not conclusively prove its case or show that it is more likely than not to prevail.").

**2. The Forum Provision in the Controlling SSA Is Enforceable**

Defendants, relying on *Abbruzzese*, argue that the forum provision in the Controlling SSA is unconscionable and thus unenforceable. But as Defendants acknowledge in a footnote (Opp'n 21 n.2), the *Abbruzzese* court recently certified its order for interlocutory appeal. That court "agree[d] with Valve that the order presents a novel legal question on which fair-minded jurists might reach contradictory conclusions" and indicated that it believed that neither side was "'on comfortable ground.'" *Abbruzzese*, Dkt. 192 at 4.

As explained below, Valve respectfully submits that the forum provision in the Controlling SSA is enforceable and in no way unconscionable.

(To be clear, that question has no application to Defendant Bartell, who signed up for his Steam account many months after the Controlling SSA update took effect. This discussion addresses only the other Steam User Defendants.)

(a) <u>The Controlling SSA's Forum Provision Is Not Procedurally Unconscionable</u>

(i) <u>Potential Interruptions in Defendants' Steam Usage Do Not Render the Controlling SSA Procedurally Unconscionable</u>

Defendants assert that they had no choice but to agree to the Controlling SSA because otherwise they would have lost access to their game libraries. (Opp'n 8.) But Valve's notices—which the Opposition disregards—are clear: the Steam User Defendants *could* have kept their Steam accounts and continued arbitrating under the Superseded SSA if they suspended using their accounts for the duration of the proceeding. Defendants do not deny that some Steam users, like Ryan Lally (also represented by these same Defendants' Counsel), did just that. (Mot. 16 n.5.)

Even if Defendants had to relinquish their games to avoid agreeing to the Controlling SSA—and they did not—that would not render their agreement procedurally unconscionable. *See Bassett v. Elec. Arts Inc.*, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015) (requirement that



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

consumer enter into arbitration agreement after making video game purchase, notwithstanding alleged inability to return purchase, did not render agreement unconscionable), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015). Defendants argue that Valve's authorities on this point (Mot. 15) do not involve consumers "directed to surrender property already purchased to preserve a legal right already exercised." (Opp'n 10.) But each of *Adkins v. Facebook, Inc.*, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019), *Bassett*, *Leong v. Square Enix of Am. Holdings, Inc.*, 2010 WL 1641364 (C.D. Cal. 2010), *aff'd*, 462 F. App'x 688 (9th Cir. Dec. 20, 2011), and *DeAsis v. Young Men's Christian Ass'n of Yakima*, 183 Wash. App. 1018 (2014), followed a categorical rule that unconscionability does not attach to nonessential recreational activities similar to the one at issue here. Those cases did not depend on whether a contract required the party to "surrender property" or a "legal right already exercised."

In any event, the possibility that Defendants might have to suspend use of their accounts if they did not want to agree with an amendment was within Defendants' "reasonable expectations" when they acquired their game licenses: Defendants agreed to such a provision in both the Superseded and Controlling SSA, which they must agree to before making any game purchase on Steam. *See Missing Link, Inc. v. eBay, Inc.*, 2008 WL 3496865, at *5 (N.D. Cal. Aug. 12, 2008).

Fundamentally, it is neither procedurally nor substantively unconscionable to offer licensed video games subject to conditions, including potential termination of the license. (Mot. 14.) There is therefore no legal obligation to make licensed video games available in perpetuity. Defendants do not respond to this point and thus concede it. *Pham v. Bondi*, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

(ii) <u>Valve's Provision of Notice to All Steam Users Does Not Render the Controlling SSA Procedurally Unconscionable</u>

Defendants argue that the Controlling SSA is unconscionable because Valve provided notice of the SSA update directly to all Steam users, including the Steam User Defendants, notwithstanding that Defendants had commenced proceedings. (Opp'n 8.) But courts have held



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

that a business may communicate directly with its consumer base to update its user agreement, even amid pending litigation. (Mot. 17.) To hold otherwise would be "unworkable in practice" and would "essentially freeze" businesses' contracts in place. *Haider v. Lyft, Inc.*, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021). Defendants do not dispute that authority.

Defendants also do not contest that, although not required, Valve gave written notice to their counsel *the day after* the update. Defendants' Counsel appear to have advised their clients regarding the update that same day. Defendants' Counsel argue that Valve "obtained 'assent'" before "even mentioning" the update to lawyers, but that gets the chronology wrong: all but one of these Steam User Defendants accepted the agreement well after Valve provided notice to their counsel on September 27, 2024. (Lynch Decl. ¶ 26 (Bradley: October 1, 2024); ¶ 29 (Copelin: October 3, 2024); ¶ 33 (Bock: November 16, 2024); ¶ 34 (Grunwald: November 1, 2024); ¶ 36 (Kelley: October 6, 2024); ¶ 38 (King: October 9, 2024); ¶ 42 (Morgano: December 22, 2024); ¶ 44 (Ritter: November 14, 2024); ¶ 46 (Zlatnik: November 1, 2024); ¶ 48 (Bartell: March 13, 2025).) The remaining Steam User Defendant made 131 purchases on Steam after September 27, 2026, each time assenting to the Controlling SSA. (*Id.* ¶ 31.)

(iii) There Is No Ambiguity in the Update Provision of the Superseded SSA

Defendants contend that Section 8(B) of the Superseded SSA "creates . . . ambiguity" in the rejection terms. They reason that while it "states that a user's failure to cancel their account constitutes acceptance of the new SSA, the very next sentence directs non-accepting users to indicate their refusal by either canceling their account or ceasing use of their subscriptions." (Opp'n 9.) But this provision is not ambiguous. It simply provides alternative means by which a user may choose not to assent to the Controlling SSA. There is no tension in these options.

(iv) Defendants Cannot Avoid the Controlling SSA on the Theory That It Is a Contract of Adhesion

Defendants argue that the SSA is a contract of adhesion. (Opp'n 9.) But they concede that courts routinely enforce agreements entered into through exactly the same means. The Superseded



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

SSA Defendants seek to enforce was presented to the Steam User Defendants in the same manner.

(b) The Controlling SSA's Forum Provision Is Not Substantively Unconscionable

Defendants also do not show that the forum provision in the Controlling SSA is substantively unconscionable. Defendants rely heavily on the court's preliminary order in *Abbruzzese*. But, as the Motion explains, the *Abbruzzese* court concluded that the defendants there were on "the verge of relief" at the time the court issued its decision and so enjoining their arbitrations would be unjust. *Abbruzzese*, 2026 WL 1481630, at *10. Here, no Defendant's arbitration has even begun and no arbitrators have even been assigned to Defendants' claims.

Defendants' arguments to the contrary are without merit:

*First*, Defendants acknowledge that unconscionability is determined at the time of contract formation. But the *Abbruzzese* court based its unconscionability determination on the facts at the time of its decision, not at the time of formation. Under that rationale, Defendants are differently situated from the *Abbruzzese* defendants because their arbitrations have not advanced at all.

*Second*, Defendants contend that "[t]he absence of arbitral progress is completely Valve's doing" because Valve did not pay $20.875 million in arbitration fees. (Opp'n 12.) But that does not change the fact that Defendants will lose nothing if they are ordered to proceed in court in accordance with the agreement to which they assented. An injunction will not "unwind[]" any "work and expense" by Defendants. *Abbruzzese*, 2026 WL 1481630, at *9. Nor will it "threaten[]" any "awards" in arbitrations where there is not even an arbitrator assigned. *Id.*

In any event, the fees Defendants reference have nothing to do with Defendants Bartell, Bock, King and Ritter, none of whom had even commenced their arbitrations at the time the AAA issued its invoice. (*See* Marks-Dias Decl. ¶¶ 19-20.) The other Defendants had the option to advance the fees for their arbitrations—fees of just $1,400 per case, not $20.875 million. Indeed, their counsel told the AAA that it intended to advance these fees. (Ex. 8.) (Significantly,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants concede that the unconscionability inquiry "protects the consumer, not counsel."[3] Here the consumer has undertaken no effort and incurred no expense.)

*Third*, Defendants assert the forum provision in the Controlling SSA is unconscionable as to Defendants Bartell, Bock, King, and Ritter because they had putatively notified Valve of their intention to arbitrate before they agreed to the Controlling SSA. But they did not file claims until more than a year after the SSA was updated, and so *Abbruzzese* does not help them. And regardless, parties are always free to enter into a new agreement that supersedes their prior agreement and applies retroactively, including to accrued claims. *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 295 (S.D.N.Y. 2025) (implied covenant did not prevent mutual modification that applied to accrued claim); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *9-10 (C.D. Cal. Jan. 8, 2026) (enforcing updated agreement to accrued claims and explaining that "the result would be the same even if the [claimants] had assented [to the updated agreement] **after initiating arbitrations with the AAA**"); *see also Ireland-Gordy v. Tile, Inc.*, 2026 WL 594859, at *5 (9th Cir. Mar. 3, 2026) (applying new forum provision to claims already asserted in class action). The authority on which Defendants rely, *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (Opp'n 12), addressed unilateral amendments, and its reasoning "does not extend to mutual modifications." *Pilon*, 769 F. Supp. 3d at 295 (distinguishing *Cobb*).

Defendants argue the benefits of the Controlling SSA are one-sided but they ignore the benefits shown in the Motion, including access to courts to pursue claims individually or participate in the pending overlapping class action.

Defendants speculate that enforcing the Controlling SSA would eliminate substantive rights because their antitrust claims would be time-barred if asserted now in court. But their claims are tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because there is a pending putative class action that encompasses those antitrust claims. Defendants argue that *American Pipe* tolling is "worthless" because Valve contends "no class could be certified." That

[3] Defendants also concede that their counsel has obtained litigation funding to pursue their claims.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

is a non sequitur. Defendants would receive the benefit of *American Pipe* tolling regardless of whether a class is ultimately certified.

### 3. The Parties Have No Agreement To Arbitrate Even If the Forum Provision in the Controlling SSA Is Deemed Unconscionable and Thus Unenforceable

Even if the Controlling SSA's forum provision were not enforced (and it should be), its merger clause extinguished the Superseded SSA and its arbitration agreement. Defendants do not successfully distinguish Valve's authorities on this point:

1) Defendants argue that the amended terms at issue in *Trudeau v. Google LLC*, 349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68, 70 (9th Cir. 2020), included an express opt-out. *Id.* at 878-79; (Opp'n 15). But that decision did not turn on an opt-out right. *See Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020). Nonetheless, the Steam User Defendants had an ability to opt out by suspending their use of Steam during the pendency of their arbitrations.

2) Defendants attempt to distinguish *Peters v. Amazon Services LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013), on the ground that it did not involve consumers, but they identify nothing in the decision holding that an integration clause is less than enforceable in consumer contracts (nor can they). *Id.* at 1173. Defendants also seek to distinguish *Peters* on the ground that the new agreement there contained an arbitration agreement. But they don't explain why that distinction might matter and indeed it doesn't.

- Defendants concede that *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1067 (S.D. Cal. 1999), "supports Valve's proposition." (Opp'n 15.) But Defendants contend that "the prior agreement at issue in *Thiele* did not have a survivorship clause that explicitly preserved the obligation to arbitrate if the prior agreement was terminated." (Opp'n 16.) However, the "prior agreement" was not terminated here—it was superseded by an updated agreement—so the survivorship clause does not apply by its own terms. Moreover, a dispute resolution provision in an updated agreement is



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

enforceable when the agreement articulates that intent, even if the superseded agreement contained a survivorship clause. *See Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 524-26 (2d Cir. 2011) ("[P]arties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration.").

#### 4. Defendants Do Not Refute Valve's Showing that Defendant Alshalaldeh Has No Agreement to Arbitrate with Valve

Valve has also established a likelihood of success on the merits of its claim that Defendant Alshalaldeh has no right to arbitrate. Valve submitted evidence that, based on the information provided by Defendants' Counsel, Valve has no record of a Steam account for her and thus no record of an agreement to arbitrate with her. (Lynch Decl. ¶ 52.) Defendant Alshalaldeh argues in an unsworn opposition brief that Valve's evidence is "not proof." But, as with Defendant Bartell, Defendant Alshalaldeh provides no evidence to the contrary. Nor does she provide other identifying information that would enable Valve to locate an account (assuming one existed). Instead, Defendant Alshalaldeh invites the Court to speculate that Valve's records could be incomplete or mistaken. This speculation cannot defeat Valve's right to injunctive relief.

### B. Valve Faces Irreparable Harm If Forced To Arbitrate

Defendants argue that "Valve's irreparable-harm showing fails on its own record, for three independent reasons." (Opp'n 17.) They are wrong on all counts:

*First*, although the AAA has stayed 8 of the 12 arbitrations, that does not eliminate the imminent harm Valve faces. Those stays are temporary and they do not resolve the issue presented by this action: whether Defendants may compel Valve to arbitrate under an agreement that does not govern their claims. The AAA has also indicated that it intends to appoint merits arbitrators. Unless this Court grants injunctive relief, the stayed proceedings may resume, forcing Valve to arbitrate disputes that Valve and Defendants did not agree to arbitrate, and any awards will be subject to vacatur. (Mot. 21.)

*Second*, Defendants wrongly characterize Valve's injury as limited to the payment of



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arbitration fees. (*See* Opp'n 17.) If arbitration proceeds, Valve cannot recover the time, resources, and burdens associated with defending multiple arbitrations before different decisionmakers. Nor can it undo the loss of its contractual right to have arbitrability and the underlying claims determined in the proper forum. As courts consistently hold, those harms cannot be adequately remedied after the fact. (Mot. 20-21.)

*Third*, Defendants argue Valve waited too long to file this lawsuit. That is wrong: Valve acted promptly. It filed this action in May 2026, shortly after Defendants' Counsel asked the AAA to proceed with administering their arbitrations in April 2026. (Mot. 8-9.) Defendants' argument is also internally inconsistent: They argue that Valve is moving too soon because nothing is happening in the arbitrations that they claim are stayed (a false premise, as explained above). But they also argue that Valve should have acted sooner. Both cannot be correct. The truth is that Valve brought this action and this motion at the appropriate time and faces irreparable harm in the absence of an injunction.

Defendants claim that Valve has an adequate legal remedy because it may move to vacate awards entered in *ultra vires* arbitrations. (Opp'n 18.) But being forced to arbitrate through to final awards where there is no agreement to arbitrate is irreparable harm, as Valve's authority establishes. (Mot. 20-21.) Defendants assert that "Valve's *per se* authorities do not apply" because they "concern parties who never agreed to arbitrate and never invoked arbitration." (Opp'n 18.) But these authorities do not so limit their analysis.

Defendants' sole authority is readily distinguishable. In *Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302 (C.D. Cal. Apr. 15, 2020), the court denied injunctive relief because "Plaintiff [did] *not* argue that Defendants' wage and hour claims themselves [were] *non-arbitrable*," as Valve argues here, "but instead [took] issue with the method Defendants' counsel [had] used"—proceeding as a de facto class arbitration rather than on an individual basis. *Id.* at *8 (emphasis in original). That unusual procedural setting is not germane here.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### C. The Relative Interests of the Parties Favor An Injunction

Defendants argue that if an injunction is issued they "lose the only forum available to them." That is false: they may proceed in court. Defendants argue that the *Wolfire* consumer class action is an inadequate substitute for individual arbitration. (Opp'n 19.) They ignore that Defendants may file individual actions in court.

Defendants' contention that Valve has somehow delayed their arbitrations is likewise meritless: indeed, four of them did not file their arbitrations until April 2026.

### D. The Public Interest Favors An Injunction

Defendants do not contest Valve's authority showing that "[t]here is no public interest in compelling" a party "to arbitrate if it does not have to" or in allowing an arbitration to proceed only to result in motions to vacate. (Mot. 23.) Instead, Defendants speculate that "Valve's conduct here is the second move in" "serial forum-switching." (Opp'n 19.) But there is no showing that Valve seeks to engage in serial forum-switching. The record refutes that notion: Valve has changed the forum for disputes in the SSA just once in the last 15 years. (Mot. 23.) That notwithstanding, courts overseeing class actions have authority to step in where appropriate. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1065 (W.D. Wash. 2019).

Defendants argue that Valve removed the arbitration agreement and class action waiver from the SSA because "the cost of arbitrating is so high" but that is simply false. Valve did so because (i) the arbitration agreement was ruled unconscionable in four arbitrations and (ii) Bucher Law used those rulings to commence a parallel class action asserting claims that it described as "overlapping" with claims pending in arbitration, on behalf of all Steam users, including those who were still pursuing arbitrations. The public interest does not favor duplicative parallel claims in multiple forums, forum shopping, or consumer confusion about the correct forum in which to pursue a claim. Defendants' bare desire to impose expense on Valve could not implicate the public interest.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### E. The Court Should Not Require A Bond

Courts do not impose a bond requirement when enjoining arbitrations where, as here, there is no agreement to arbitrate. (Mot. 24.) Defendants suggest that a "substantial bond" is warranted because "an injunction would remove Defendants' only available forum and expose their antitrust claims to limitations risk." (Opp'n 21.) But Defendants identify no limitations risk. Nor do they identify any costs or damages they will incur by having their arbitrations delayed. (Mot. 24.)

## III. <u>CONCLUSION</u>

Valve requests that the Court enjoin Defendants' arbitrations.

DATED: August 6, 2026

I certify that this memorandum contains 4,200 words, in compliance with the Local Civil Rules.

CORR CRONIN LLP

s/ *Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr.,
*Admitted Pro Hac Vice*
Meredith C. Slawe,
*Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Plaintiff Valve Corporation*